**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| LOS ANGELES UNIFIED SCHOOL DISTRICT, *Plaintiff-Appellant*, v. MICHAEL GARCIA, *Defendant-Appellee*. | No. 10-55879 D.C. No. 2:09-cv-09289-VBF-CT OPINION |

Appeal from the United States District Court
for the Central District of California
Valerie Baker Fairbank, District Judge, Presiding

Argued December 9, 2011
Submitted January 28, 2014
Pasadena, California

Filed January 28, 2014

Before: Alex Kozinski,[*] Chief Judge, and Barry G. Silverman and Kim McLane Wardlaw, Circuit Judges.

Per Curiam Opinion

---

[*] On January 9, 2014, Chief Judge Kozinski was drawn to replace the late Judge B. Fletcher.

## SUMMARY[**]

### Education Law

Affirming the district court's judgment, the panel held, pursuant to the Supreme Court of California's answer to a certified question, that when a student between the ages of 18 and 22 who is eligible for special education services in California is incarcerated in a county jail, the cost of the student's education is borne by the school district where the student's parent resides.

### COUNSEL

Barrett K. Green (argued) and Daniel L. Gonzalez, Littler Mendelson, P.C., Los Angeles, California, for Plaintiff-Appellant.

Paula D. Pearlman, Shawna L. Parks (argued), and Andrea F. Oxman, Disability Rights Legal Center, Los Angeles, California; Linda Dakin–Grimm, Daniel M. Perry, and Delilah Vinzon, Milbank Tweed Hadley & McCloy, LLP, Los Angeles, California, for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# OPINION

PER CURIAM:

When a student between the ages of 18 and 22 who is eligible for special education services in California is incarcerated in a county jail, who pays the cost of those services?  The school district of the student's parent's residence? The county in which the jail is located? The State of California?  To find out, we certified a question of California law—specifically, the interpretation of California Education Code section 56041—to the Supreme Court of California. *L.A. Unified  Sch. Dist. v. Garcia*, 669 F.3d 956 (9th Cir. 2012).

On December 12, 2013, the California Supreme Court gave its answer:  The cost of the student's education is borne by the school district where the student's parent resides. *L.A. Unified Sch. Dist. v. Garcia*, 58 Cal. 4th 175, — P.3d —, 2013 WL 6501267 (2013).  The facts of the case are detailed in our order certifying the question to the California Supreme Court, 669 F.3d at 958–59, and in the California Supreme Court's opinion, which is attached as an appendix to this opinion.  The district court had affirmed a 2009 decision of the California Office of Administrative Hearings that the Los Angeles Unified School District was responsible for providing special education services to Michael Garcia. Because the district court's ruling is consistent with California Supreme Court's answer to the certified question, its judgment is **AFFIRMED**.

APPENDIX

RECEIVED
OFFICE OF THE CLERK
U.S. COURT OF APPEALS

COPY

2013 DEC 17 PM 3: 28

FILED

IN THE SUPREME COURT OF CALIFORNIA

FILED

DEC 1 2 2013

Frank A. McGuire Clerk

Deputy

LOS ANGELES UNIFIED SCHOOL          )
DISTRICT,                           )
                                    )
            Plaintiff and Appellant, )
                                    )
            v.                      )
                                    )
MICHAEL GARCIA,                     )
                                    )
            Defendant and Respondent. )
_____)

S199639

9th Cir. No. 10-55879

In California, an individual with a disability who is between 18 and 22 years of age and has not yet earned a regular high school diploma is entitled to continue to receive special education and related services, even while incarcerated in a county jail, so long as certain prerequisites have been satisfied. (Ed. Code, § 56040, subd. (b); see *id.*, §§ 56000, 56026, subd. (c)(4); all unlabeled statutory references are to the Education Code.) Like the other states that receive substantial federal funds for special education and related services, California's policies and procedures governing special education programs must conform to the requirements of the federal Individuals with Disabilities Education Act (hereafter IDEA), and the federal regulations that implement and clarify its provisions. (20 U.S.C. § 1400 et seq.; 34 C.F.R. §§ 300.100-300.176 (2013).) But Congress has left it to each state to determine which public entity within the state is responsible for providing special education and related services to its eligible pupils, including those incarcerated in county jail.

# 6 LAUSD v. GARCIA

One of the provisions in California's special education scheme that designates the entity responsible for providing a special education program is section 56041. We granted the request of the United States Court of Appeals for the Ninth Circuit to answer the following question of California law, as reformulated by this court: Does California Education Code section 56041, which provides generally that for qualifying pupils between the ages of 18 and 22 years, the school district where the pupil's parent resides is responsible for providing special education and related services, affix responsibility for providing special education to a qualifying individual who is incarcerated in a county jail? (Cal. Rules of Court, rule 8.548(f)(5).)

We answer that question "Yes." As we shall explain, although section 56041 does not by its terms specifically address county jail inmates, the statutory language is broad enough to encompass special education programs for eligible county jail inmates between the ages of 18 and 22 years, and no other statute explicitly assigns responsibility for the provision of special education to such individuals. Applying the terms of section 56041 to assign responsibility in this setting is consistent with the purposes of the statute and the special education scheme as a whole, and does not create absurd or unworkable results.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael Garcia was born in June 1990. His mother has resided in the City of Bell, in Los Angeles County, from before Garcia's birth until the present time. Garcia first became eligible for special education services in the second grade, when he was identified as having specific learning deficiencies as well as speech and language impairment. His "district of residence," the Los Angeles Unified School District (L.A. Unified), provided the special education program in his early years. (See § 48200; *Union School District v. Smith* (9th Cir. 1994) 15 F.3d 1519, 1525, fn. 1 [the compulsory education residency rule for children ages 6 through

2

18 also determines the local educational agency responsible for providing a special education program].)  When Garcia was 15 years old, he left L.A. Unified and enrolled in the Soledad Enrichment Action Charter School, chartered by the Los Angeles County Office of Education, which provided him with a special education program.  (See §§ 47640, 47641.)

Thereafter, sometime before Garcia's 16th birthday, he was arrested on felony charges and held at the Barry J. Nidorf Juvenile Hall in Los Angeles County.  While Garcia was being detained in the juvenile facility, he was provided a special education program by the Los Angeles County Office of Education, which, by statute, is the entity responsible for providing general and special education in the county's juvenile court schools.  (See §§ 48645.2, 56150.)  Like L.A. Unified, the Los Angeles County Office of Education determined that Garcia was eligible for special education and related services due to his specific learning disability and speech and language impairment.  In June 2008, when Garcia turned 18 years old, he was transferred from the juvenile facility to the Los Angeles County Jail to await trial.

In December 2008, counsel from the Disability Rights Legal Center filed on behalf of Garcia and other similarly situated individuals a request for a due process hearing before the California Department of General Services, Office of Administrative Hearings, Special Education Division (OAH), alleging that Garcia and others like him were being denied a free appropriate public education (hereafter sometimes FAPE), as required by the IDEA, because there was no system for delivering special education services for eligible inmates in the Los Angeles County jail.  (See 20 U.S.C. § 1415(f); 34 C.F.R. § 300.151-300.153; Cal. Code Regs., tit. 5, §§ 3080, 3082, 4610.)  The request named as defendants the Los Angeles County Sheriff's Department, the County of Los Angeles, the Los Angeles County Office of Education, the California Department of Education, and

3

Case: 10-55879    12/17/2013      ID: 8911992    DktEntry: 63    Page: 4 of 29

other educational and public entities and officials. Because the OAH is not authorized to consider class actions, the OAH refiled the complaint as one by Garcia individually. The OAH also removed three of the named defendants from the complaint because they were not proper parties to a special education due process hearing. Notably, the initial complaint filed with the OAH did *not* name L.A. Unified as a defendant.

Most of the claims in Garcia's complaint were dismissed in January 2009, either because they alleged injuries to a class or because the legal basis of the claim, for example, the federal Americans with Disabilities Act (42 U.S.C. § 12101 et seq.), fell outside the OAH's jurisdiction. Of the remaining claims, which alleged that the defendants had failed to provide Garcia with the FAPE to which he was entitled, the administrative law judge (ALJ) granted each defendant's motion to be dismissed as a party and dismissed the complaint in its entirety. The ALJ noted there was no statute specifically allocating responsibility for providing a FAPE to an eligible individual who was incarcerated in a county jail. Accordingly, the ALJ looked to what it characterized as the "more general" rule set forth in section 56041, which the ALJ understood to assign responsibility to the school district in which the parent of a qualified pupil between the ages of 18 and 22 years resides. (See *post*, at pp. 11-12.) In concluding that section 56041 applied, the ALJ noted that "it is not uncommon for a responsible district to administer a distant placement," and expressed the view that any "difficulties in applying section 56041 in adult correctional facilities is a proper subject for the Legislature." (*Garcia v. Los Angeles County Sheriff's Department* (OAH, Feb. 9, 2009, No. 2009010064).)

One month after the ALJ's decision, Garcia and others filed a class action in federal district court, alleging the same claims against the same parties named in the due process complaint. (*Garcia v. Los Angeles County Sheriff's Department,*

Case: 10-55879     12/17/2013      ID: 8911992     DktEntry: 63     Page: 5 of 29

case. No. 09-1513 VBF (CTx); see 20 U.S.C. § 1415(i)(2)(A) [any party aggrieved by the findings or outcome of the due process hearing can bring a civil action in state or federal court].)  Three months later, in late May 2009, the district court dismissed the action without prejudice.  The district court concluded that plaintiffs had failed to exhaust their administrative remedies under the IDEA because they did not file an amended complaint at the administrative level "naming proper parties against whom relief could be sought."  (See 20 U.S.C. § 1415(f), (g), (i); *Christopher S. ex rel. Rita S. v. Stanislaus County Office of Education* (9th Cir. 2004) 384 F.3d 1205, 1209 [a plaintiff generally must exhaust his or her administrative remedies before seeking relief in federal or state court under the IDEA].)  Dismissal also was warranted, the district court ruled, because plaintiffs failed to join L.A. Unified as a party to the class action.

In June 2009, within days of the dismissal of the class action in federal court, Garcia filed a second due process complaint with the OAH, this time naming only L.A. Unified as a party and arguing that L.A. Unified was responsible for providing him with a special education program in county jail.  In November 2009, after a hearing, the OAH issued a decision reaffirming the ALJ's conclusion in the previous due process proceeding that section 56041 applied to designate the entity responsible for providing a special education program to Garcia.  It further concluded that, because Garcia's mother resides within L.A. Unified's boundaries, L.A. Unified was responsible for Garcia's special education while he was incarcerated in county jail.  (*Student v. Los Angeles Unified School District* (OAH, Nov. 16, 2009, No. 2009060442).)

Pursuant to the November 2009 order by the OAH, L.A. Unified provided Garcia with a special education program in the Los Angeles County jail.  Meanwhile, it filed in the federal district court a motion for relief from the OAH's decision.  In May 2010, the district court affirmed the OAH decision, finding in

relevant part that the OAH correctly determined section 56041 applies to allocate responsibility for providing special education and related services to Garcia in county jail and that, under that provision, L.A. Unified was responsible for providing such services.

L.A. Unified appealed the district court's order. While the appeal was pending, Garcia was transferred to state prison after pleading guilty to several charges in exchange for a sentence of 12 years. Acknowledging that the issue presented in the appeal was moot because Garcia, although still under the age of 22 years, was no longer incarcerated in county jail, the Ninth Circuit panel found nonetheless that the case presented an issue that was "capable of repetition yet [likely to evade] review" and that it therefore fell within an exception to the mootness doctrine. (*Los Angeles Unified School District v. Garcia* (9th Cir. 2012) 669 F.3d 956, 958, fn. 1 [order certifying question to California Supreme Court].) As the federal appellate court observed, "the failure to provide special education services to eligible inmates in county jails is ongoing, and eligible inmates will usually not be incarcerated in the jail long enough to bring a legal challenge." (*Ibid.*) However, the Ninth Circuit then ordered proceedings stayed pending this court's decision whether to accept or reject its request pursuant to rule 8.548 of the California Rules of Court that we decide a question of state law that would determine the outcome of the appeal. Specifically, the Ninth Circuit asked this court to decide: "Does California Education Code § 56041 — which provides generally that for qualifying children ages eighteen to twenty-two, the school district where the child's parent resides is responsible for special education services — apply to children who are incarcerated in county jails?" (*Los Angeles Unified School District v. Garcia, supra,* at p. 958.)

By order dated March 28, 2012, this court granted the Ninth Circuit's request and agreed to decide the proffered state law issue. We have reformulated

the question as follows to conform to California law: "Does California Education Code section 56041, which provides generally that for qualifying pupils between the ages of 18 and 22 years, the school district where the pupil's parent resides is responsible for providing special education and related services, affix responsibility for providing special education to a qualifying individual who is incarcerated in a county jail?" (See Cal. Rules of Court, rule 8.548(f)(5).)

DISCUSSION

Pursuant to California's constitutional and statutory commands, the state is obligated to provide a free public education (Cal. Const., art. IX, § 5) to all children between the ages of 6 and 18 years who are not otherwise exempted from compulsory full-time or continuing education (§ 48200; see Cal. Const., art. IX, §§ 1, 3; §§ 48220-48232; *Butt v. State of California* (1992) 4 Cal.4th 668, 680-681, 683; *Jonathan L. v. Superior Court* (2008) 165 Cal.App.4th 1074, 1089-1091.) When a child or young adult under the age of 19 years has been identified as an individual with a qualifying disability and has not received a high school diploma or otherwise met prescribed educational goals, federal and state law additionally require that he or she have available a free appropriate public education until reaching the age of 22 years. We discuss the relevant statutes below.

A. *Statutory background*

Congress enacted the IDEA in order "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs . . . ." (20 U.S.C. § 1400(d)(1)(A).) The IDEA accomplishes that objective through partial federal funding. Under the IDEA, a state is eligible to receive federal financial assistance for educating disabled students by having in place

policies and procedures that will ensure compliance with certain enumerated goals and procedures. (20 U.S.C. § 1412(a); *County of San Diego v. Calif. Special Educ. Hearing Office* (9th Cir. 1996) 93 F.3d 1458, 1461-1462.)[1]

In 1980, California's lawmakers enacted a comprehensive statutory scheme that substantially restructured California's then-existing special education system. (§ 56000 et seq., added by Stats. 1980, ch. 797, § 9, p. 2411.) The Legislature's intent was to "improve special education programs in California under the flexible program design of the Master Plan for Special Education" (§ 56000) and thereby enhance compliance with the federal funding requirements of the IDEA's predecessor, the Education of the Handicapped Act, which was then the governing federal legislation (see *Hayes v. Commission on State Mandates* (1992) 11 Cal.App.4th 1564, 1591). Subsequent to statewide implementation of the Master Plan for Special Education (Master Plan) in 1980 and enactment of the IDEA in 1990, California's Legislature has continued to amend the special education statutes, refining the Master Plan and conforming California law to further changes in the federal requirements. (See Legis. Analyst Rep., Overview of Special Education in California, Jan. 3, 2013, p. 7 <http://www.lao.ca.gov/laoapp/laomenus/sections/education.aspx> [as of Dec. 12, 2013].)

One of the conditions for a state's receipt of federal funding under the IDEA is its assurance that a "free appropriate public education" is available to all

---

[1]    Although Congress intended to fund 40 percent of the additional costs incurred by a state to educate disabled students, the actual level of reimbursement has never met that goal and appears to be closer to 20 percent. (*California School Bds. Assn. v. Brown* (2011) 192 Cal.App.4th 1507, 1514, fn. 4; see, e.g., IDEA Full Funding Act of 2000, Sen. No. 2341, 106th Cong., (1999-2000) § 2.)

qualified students residing in the state. (20 U.S.C. § 1412(a)(1)(A).) A FAPE is "special education and related services," provided at public expense, which meet the standards of the state's educational agency and conform to the student's individualized education program. (20 U.S.C. § 1401(9).) To comply with the IDEA, the responsible entity must evaluate the student, determine his or her eligibility for special education and services and, if the student is eligible, develop and implement an individualized educational program. (20 U.S.C. § 1414.)

Under the IDEA, "all children with disabilities residing in the State between the ages of 3 and 21, inclusive" are entitled to a FAPE. (20 U.S.C. § 1412(a)(1)(A).) There are, however, certain limited exceptions to that entitlement. For example, a state receiving federal funds is *not* obligated to provide a FAPE to a disabled student once the student has been awarded a regular high school diploma. (34 C.F.R. § 300.102(a)(3)(i) (2013).) In addition, the IDEA does not require the states to provide a FAPE to disabled students ages 18 through 21 years "who, in the educational placement prior to their incarceration in an adult correctional facility — [¶] (I) were not actually identified as being a child with a disability . . . ; or [¶] (II) did not have an individualized education program . . . ." (20 U.S.C. § 1412(a)(1)(B)(ii).)

In the present matter, there is no dispute that, under the IDEA and the California statutes that implement its policies, the individual on whose behalf this action was brought, Garcia, was entitled to continue to receive a FAPE while incarcerated in county jail: He was under the age of 22 years, had not received a high school diploma or otherwise met prescribed goals, and, prior to his incarceration, he had been identified as a disabled student and had an individualized educational program. (See §§ 56026, subd. (c)(4), 56040, subd. (b).)

Although the IDEA's requirements to obtain federal funding are substantial, it " 'leaves to the States the primary responsibility for developing and executing educational programs' " for disabled students. (*Schaffer v. Weast* (2005) 546 U.S. 49, 52, quoting *Board of Ed. of Henrick Hudson Central School Dist., Westchester County v. Rowley* (1982) 458 U.S. 176, 183, 207.) The IDEA likewise leaves it to the states to decide how they will allocate among the various state and local public agencies the responsibility for providing, and funding, special education programs in accordance with its provisions. (See *Manchester School Dist. v. Crisman* (1st Cir. 2002) 306 F.3d 1, 10 ["The IDEA nowhere purports to allocate financial liability among the multitude of school districts housed within the fifty states"]; see also *J.S. v. Shoreline Sch. Dist.* (W.D. Wash. 2002) 220 F.Supp.2d 1175, 1191-1192 [the assignment of responsibility for providing a FAPE typically turns on the issue of residency, which is a matter of state law]; *Linda W. v. Indiana Dept. of Education* (N.D. Ind. 1996) 927 F.Supp. 303, 307.)

Of relevance here, federal rulemakers intentionally declined to designate the entity responsible for providing special education and related services to incarcerated individuals. According to the federal Department of Education's analysis of comments to proposed changes in the regulations implementing the IDEA, "whether [such services to eligible incarcerated individuals] are provided directly by the State or through [a local educational agency] is a decision that is best left to States and [local educational agencies] to determine." (U.S. Dept. of Ed., Off. of Special Education and Rehabilitation Services, final Regs., Assistance to States for the Education of Children with Disabilities and Preschool Grants for Children with Disabilities, Analysis of Comments and Changes, com. to § 300.324(d), 71 Fed.Reg. 46540, 46686 (Aug. 14, 2006).)

10

The narrow question presented for our decision is whether one of the provisions in California's special education scheme that designates the entity responsible for providing a special education program, section 56041, affixes responsibility for making a special education program available to an eligible young adult between the ages of 18 and 22 years who is incarcerated in county jail. For the reasons discussed below, we conclude that, under the current statutory scheme, the determination of which entity is responsible for providing special education and related services to a qualified county jail inmate between the ages of 18 and 22 years is governed by the terms of section 56041.

### B. Section 56041

As mentioned above, lawmakers have attempted to assure California's continued receipt of federal funding by enacting legislation to conform our state's special education policies and procedures to changes in the federal requirements. In 1992, the Legislature undertook one of several comprehensive revisions of the special education statutory scheme, amending several existing provisions and adding new ones. (Stats. 1992, ch. 1360, § 1 et seq., pp. 6806-6838 [enacting Assem. Bill No. 2773 (1991-1992 Reg. Sess.)].) The measure addressed a number of major issues, including procedures for expulsion and suspension of special education pupils, alternative dispute resolution at the local level, and services to pupils with attention deficit hyperactivity disorders. (See §§ 48911-48912, 48915.5, 56138, 56339.) The 1992 legislation also added section 56041, the statute at issue in the present case. (Stats. 1992, ch. 1360, § 8, p. 6818.) That provision, which reads the same today as at the time it was enacted, states as follows:

"Except for those pupils meeting residency requirements for school attendance specified in subdivision (a) of Section 48204, and notwithstanding any

11

other provision of law, if it is determined by the individualized education program team that special education services are required beyond the pupil's 18th birthday, the district of residence responsible for providing special education and related services to pupils between the ages of 18 to 22 years, inclusive, shall be assigned as follows:

"(a) For nonconserved pupils, the last district of residence in effect prior to the pupil's attaining the age of majority shall become and remain as the responsible local educational agency, as long as and until the parent or parents relocate to a new district of residence. At that time, the new district of residence shall become the responsible local educational agency.

"(b) For conserved pupils, the district of residence of the conservator shall attach and remain the responsible local educational agency, as long as and until the conservator relocates or a new one is appointed. At that time, the new district of residence shall attach and become the responsible local educational agency."

(§ 56041.)

The question presented to this court by the Ninth Circuit Court of Appeals, whether section 56041 applies to designate the entity responsible for providing special education to an eligible 18- to 22-year-old county jail inmate, is one involving statutory construction. To answer that question, we are guided by the overarching principle that our task " 'is to determine the intent of the enacting body so that the law may receive the interpretation that best effectuates that intent. [Citation.]' " (*City of Alhambra v. County of Los Angeles* (2012) 55 Cal.4th 707, 718-719.) We begin by examining the words of the statute because the " ' "language is generally the most reliable indicator of legislative intent. [Citation.]" ' " (*Id.* at p. 719.) The statutory language is not read in isolation, however. Rather, we consider its terms "in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the

various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." (*Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737.)

As a general matter, section 56041, subdivision (a) (hereafter 56041(a)), assigns responsibility for providing special education and related services to "nonconserved pupils" between the ages of 18 to 22 years to the school district in which the pupil's parent or parents reside. As previously mentioned, both the federal district court and the OAH relied upon the plain language of section 56041(a) to conclude that, based on the location of Garcia's mother's residence at the time Garcia reached the age of 18 years and thereafter, L.A. Unified was responsible for providing a special education program to Garcia while he was incarcerated in county jail.

Garcia urges this court to reach a similar conclusion. As he points out, under sections 48200 and 48204, a school district is responsible for providing a free full-time public education or a free appropriate public education, as the case may be, to all students between the ages of six and 18 whose parent or legal guardian resides within the jurisdictional boundaries of the school district, unless one of the specified exceptions to the residency rule applies. (See *Union School District v. Smith, supra,* 15 F.3d at p. 1525, fn. 1 [§ 48200 also determines the local educational agency responsible for providing a special education program].) According to Garcia, section 56041 constitutes a parallel rule of general applicability for disabled students between the ages of 18 and 22 years.

Of the various statutes appearing in the Education Code that designate the entity responsible for providing special education services, section 56041 is the only provision that expressly refers to pupils between the ages of 18 and 22 years. By its terms, however, section 56041 does not purport to assign to the school

13

district in which the pupil's parent resides the responsibility for providing a special education program for *every* qualified pupil in California between the ages of 18 and 22 years. As set forth above, the introductory clause of section 56041 explicitly excepts from the reach of the statute "those pupils meeting residency requirements for school attendance specified in subdivision (a) of Section 48204." That provision lists the exceptions to the general rule that children between the ages of six and 18 must attend school in the school district in which the residence of their parent or guardian is located.[2]  (See *Katz v. Los Gatos-Saratoga Joint*

---

2      Section 48204, subdivision (a), provides in relevant part that "[n]otwithstanding Section 48200, a pupil complies with the residency requirements for school attendance in a school district, if he or she is any of the following:

"(1)(A)  A pupil placed within the boundaries of that school district in a regularly established licensed children's institution, or a licensed foster home, or a family home pursuant to a commitment or placement under Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code.

"(B)  An agency placing a pupil in a home or institution described in subparagraph (A) shall provide evidence to the school that the placement or commitment is pursuant to law.

"(2)  A pupil who is a foster child who remains in his or her school of origin pursuant to subdivisions (d) and (e) of Section 48853.5.

"(3)  A pupil for whom interdistrict attendance has been approved pursuant to Chapter 5 (commencing with Section 46600) of Part 26.

"(4)  A pupil whose residence is located within the boundaries of that school district and whose parent or legal guardian is relieved of responsibility, control, and authority through emancipation.

"(5)  A pupil who lives in the home of a caregiving adult that is located within the boundaries of that school district. Execution of an affidavit under penalty of perjury pursuant to Part 1.5 (commencing with Section 6550) of Division 11 of the Family Code by the caregiving adult is a sufficient basis for a determination that the pupil lives in the home of the caregiver, unless the school district determines from actual facts that the pupil is not living in the home of the caregiver.

*(footnote continued on next page)*

*Union High School Dist., supra,* 117 Cal.App.4th at pp. 57-58.) In accordance with those exceptions, section 56041 does *not* apply when, for example, the eligible 18- to 22-year-old pupil, prior to reaching the age of majority, had been placed in a licensed children's institution or foster home by the juvenile court, or was residing in a state hospital. (§ 48204, subds. (a)(1)(A), (6).) In those instances, the responsibility for providing special education and related services lies with the school district in which the institution or home is located.

Other, more specific provisions in the special education scheme carve out additional exceptions to the application of section 56041. For example, the Legislature has assigned to the county board of education the responsibility for providing, or contracting with a local school district to provide, both general education and special education services to youth and young adults incarcerated in the juvenile detention facilities within its jurisdiction. (§§ 48645.2, 56150; see Welf. & Inst. Code § 1731.5, subd. (a)(1), (2) [a court may commit to the Division of Juvenile Facilities any person convicted of one or more specified offenses who was younger than 21 years old at the time of apprehension].) Similarly, the Legislature has assigned responsibility for providing special education to

---

*(footnote continued from previous page)*

"(6) A pupil residing in a state hospital located within the boundaries of that school district."

We observe, and at oral argument the parties agreed, that when the Legislature incorporated section 48204's exceptions to the residency rule into section 56041, lawmakers clearly intended the reference to "emancipation" in section 48204, subdivision (a)(4), to mean emancipation of a *minor*. (See also Fam. Code, § 7050, subd. (e)(15) [providing that an emancipated minor is considered an adult for purposes of "establish[ing] the minor's own residence].)

hospitalized students to the local educational agency that serves the geographic area where the hospital or medical facility is located. (§ 56167, subd. (a).)

The Legislature's designation of a single, local educational agency as the entity responsible for providing a FAPE to the qualified individuals placed in a juvenile detention facility or residing in other institutional settings arguably promotes the goals of consistent, orderly, efficient, and effective delivery of special education programs in those settings. However, our review of the educational scheme reveals that the Legislature has *not* added a provision to the statutory scheme that specifically assigns responsibility for providing a FAPE to qualified individuals in the county jail setting and has not amended section 56041 to create an exception to that effect. Nor has counsel for either side pointed to a statute or case that assigns responsibility for providing special education in these circumstances. Further, the language of other statutes such as section 48645.2, which assigns to the county board of education the responsibility for operating juvenile court schools, is not broad enough to fairly encompass responsibility for eligible individuals between the ages of 18 and 22 who are incarcerated in county jail. Absent any indications of a contrary legislative intent in the language and structure of the special education statutory scheme as a whole, we conclude that when none of the statutory exceptions to section 56041 applies, the entity responsible for providing special education to an eligible young adult pupil while he or she is incarcerated in county jail is properly determined by the terms of section 56041. As we have seen, under section 56041, the responsible entity is generally the district in which the inmate's parent resides.

L.A. Unified argues that the language of section 56041 does not evince any intent to assign responsibility for providing special education to eligible county jail inmates because the statute does not expressly refer to county jails. That section 56041 makes no specific reference to county jail inmates does not mean it

16

does not assign responsibility for providing special education services in that setting, however. As demonstrated by this court's past decisions, we have not hesitated to construe statutory language to cover a subject that was not expressly mentioned in the provision in question, when doing so is consistent with the statute's purpose. For example, in *City of San Jose v. Superior Court* (1993) 5 Cal.4th 47, we held that the procedural safeguards set forth in Evidence Code section 1045, which governs the disclosure of confidential police personnel files to criminal defendants, also applied in juvenile delinquency proceedings, notwithstanding that the statute did not expressly refer to delinquency matters. (*City of San Jose, supra,* at pp. 53-54; see also *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 183 [the Legislature's failure to specifically prohibit certain activity under the unfair competition law does not prevent a court from determining that the activity is unfair under the act].) Likewise here, the absence of an express reference to county jails does not preclude us from interpreting section 56041 to assign responsibility for providing special education to eligible 18- to 22-year-old individuals incarcerated in such facilities because such a construction is consistent with the overarching statutory purpose of satisfying the state's obligations under the IDEA by ensuring that a clearly designated educational agency is assigned responsibility for providing eligible individuals "the right to an appropriate educational opportunity to meet their unique needs." (§ 56000, subd. (a); see 20 U.S.C. §§1400(d)(1)(a), 1412(a).)

L.A. Unified argues that the legislative history of section 56041 reflects a more limited purpose, namely, to maintain interdistrict funding obligations when a student who has been placed by one school district into a special education program located in another school district reaches the age of majority and would otherwise become the funding responsibility of a district that had no involvement in the placement decision. In light of the broadly worded language of section

17

56041, we cannot agree with L.A. Unified's contention that the statute should be interpreted narrowly as applying to only the foregoing circumstances.

Section 56041 has been described as a provision that "ensure[s] funding continuity." (*Orange County Dept. of Educ. v. California Dept. of Educ.* (9th Cir. 2011) 668 F.3d 1052, 1059; see also *Sierra Sands Unified School District v. Student* (Special Ed. Hearing Off., Oct. 22, 2002, No. 2198-02) p. 2 [§ 56041 is a provision "to maintain funding responsibilities"]; *Student v. Berkeley Unified School Dist.* (Special Ed. Hearing Off., Nov. 6, 2003, No. 1989-03) [same].) As previously discussed, the statute was enacted as part of an omnibus special education bill that expanded the scope of eligibility, made procedural changes, and conformed California law to federal statutes and regulations. (Stats. 1992, ch. 1360, § 1 et seq., p. 6806 et seq.) According to legislative materials associated with the measure, section 56041 was recommended by a representative of the special education local plan area (SELPA)[3] of Santa Barbara County and "addresse[d] a problem for local educational agencies which are impacted by

---

[3]     With the implementation of California's Master Plan in 1980, each local educational agency was required to organize or join a local "special education services region" of "sufficient size and scope" to ensure the delivery of special education and related services to all qualified individuals within that geographic area. (§§ 56000, 56140; see also § 56195.1, subd. (a); Stats. 1980, ch. 797, pp. 2411-2413, 2418-2419, 2420-2423.) The SELPA can be a single district, or a group comprised of more than one district, one or more districts and a county office of education, or one or more county offices of education. (§ 56140, subd. (d).) With input from a community advisory committee that includes parents of students with disabilities, each SELPA is required to develop and submit to state officials a local plan setting out how its participating agency or agencies will implement and administer the special education programs to qualified students within the geographic area served by the plan. (§§ 56001(f), 56190, 56195.1; 56200; see generally, Legis. Analyst Rep., *supra*, Overview of Special Education in Cal.)

nonpublic, nonsectarian schools." (Sen. Com. on Ed., Rep. on Assem. Bill No. 2773 (1991-1992 Reg. Sess.) p. 2.) Our review of the legislative materials discloses no further details regarding the nature of that problem. But according to a 2003 decision by the Special Education Hearing Office,[4] relied upon by L.A. Unified to support its argument, the "problem" referred to in the foregoing legislative report concerned minor students with disabilities who resided in nonpublic, nonsectarian schools outside the jurisdiction of their local educational agency. In the hearing officer's view, "[r]ather than automatically transferring the responsibility for the student's education to the district where the student is residing when he or she is or becomes an adult at age eighteen, Section 56041 requires the educational agency that placed the student in the nonpublic or nonsectarian school to continue to be responsible for the student's education." (*Student v. Berkeley Unified School Dist.* (Special Ed. Hearing Off., Nov. 6, 2003, No. 1989-03) p. 2.)[5] The purpose of the statute, according to the hearing officer,

---

[4]     The Special Education Hearing Office was the predecessor of the OAH, which conducts the state administrative special education due process hearings that resolve complaints alleging failure to provide a FAPE or to otherwise comply with the IDEA. (§§ 56500-56507; Cal. Code Regs., tit. 5, §§ 3082, 4600 et seq.; see 20 U.S.C. § 1415(b)(6)(A), (f); 34 C.F.R. § 300.151-300.153 (2013).)

[5]     Countering L.A. Unified's assertion that section 56041 applies only in the narrow circumstances described by the Special Education Hearing Office's decision in *Student v. Berkeley Unified School Dist.,* Garcia points out that a number of subsequent administrative hearing decisions have applied section 56041 to assign responsibility to a school district that had *not* been involved in the adult pupil's individualized educational plan or placement prior to the pupil's having reached the age of majority. (See *Student v. Orange County Dept. of Education* (OAH, Nov. 30, 2009, Nos. 2009090943, 2009100565) [consolidated with *Orange County Dept. of Education v. Student*]; *Parent ex rel. Student v. California Dept. of Mental Health* (OAH, Oct. 26, 2009, No. 2009050920); *Orange County Department of Education v. Student* (OAH, May 22, 2009, Nos. 2008120021,

*(footnote continued on next page)*

was "to protect certain school districts and SELPAs that have a large number of residential schools attended by adult special education students from other districts from becoming overwhelmed by the financial responsibility for the education of those adult students." (*Ibid.*)

The materials described above support L.A. Unified's point that the impetus for the lawmakers' enactment of section 56041 was to solve a problem resulting from the placement of a minor pupil in a residential school located outside the geographical boundaries of the pupil's district of residence — that is, outside the district in which the parent resided. We observe, however, that although lawmakers were presented with a specific and narrow problem, they did not limit the statute's application to only those situations in which a school district had placed the minor student in a residential school outside of its jurisdictional boundaries. Instead, the statute is worded in broader terms. It distinguishes only between conserved and nonconserved pupils and, as previously discussed, its only express limitations are the exceptions to the residency requirements for compulsory education generally. (§ 56041, subd. (a) ["Except for those pupils meeting residency requirements for school attendance specified in subdivision (a) of Section 48204 . . . ."].)

---

*(footnote continued from previous page)*

2009020130) [consolidated with *Student v. Orange County Department of Education*]; *Student v. Los Angeles Unified School District* (OAH, Apr. 17, 2007, No. 2007010772).)

The administrative hearing decisions cited by the parties have applied, or declined to apply, section 56041 to assign responsibility for providing special education to eligible 18- to 22-year-old pupils in settings other than a county jail or other adult correctional facility. Because the factual scenarios presented by those decisions are not before us, we express no view regarding their reasoning or result.

For its part, amicus curiae California School Boards Association asserts that, notwithstanding the statute's admittedly broad terms, it is unlikely the Legislature intended for section 56041 to be used to assign responsibility for special education services for county jail inmates. As the California School Boards Association points out, when the Legislature enacted section 56041 in 1992, California law did not explicitly require special education for county jail inmates between the ages of 18 and 22, and it was not until 2004 that the Legislature amended section 56040, subdivision (b), to conform to the IDEA's amendments in this regard. (See 20 U.S.C. § 1412(a)(1)(B)(ii) [permitting states to forego providing a FAPE to an individual 18 through 21 years old who did not have an individualized education plan in place prior to his or her incarceration in an adult correctional facility].) The California School Boards Association argues that, given the statutes in existence in 1992, which included provisions *permitting*, but not *requiring*, county officials to establish general education classes in county jail facilities (§§ 1900, 1906, 1907), the Legislature could not have intended section 56041 to include within its scope the responsibility for providing special education to eligible county jail inmates.

We are persuaded that when the Legislature enacted section 56041, it did so to address a specific problem, and that lawmakers did not consider the statute's application to the setting at issue here. At the same time, however, we agree with Garcia that the applicability of section 56041 is not necessarily limited by the Legislature's lack of contemplation, at the time of the statute's enactment, whether the provision applied to assign responsibility for providing special education in a county jail. When, as here, the Legislature has chosen to address a specific problem by enacting a statute with general terms, the particular impetus for the enactment does not limit its scope. (*Khajavi v. Feather River Anesthesia Medical Group* (2000) 84 Cal.App.4th 32, 51; see *Barr v. United States* (1945) 324 U.S.

21

83, 90 [when lawmakers choose broad statutory language "it is unimportant that the particular application may not have been contemplated"].)

Notwithstanding that a distinct and specific problem may have motivated the Legislature's enactment of section 56041, our construction of that statute as the provision that designates the entity responsible for providing special education to an eligible county jail inmate between the ages of 18 and 22 years is consistent with several of the apparent objectives of section 56041. First, our interpretation of the statute follows the general state educational policy of assigning funding responsibility for a pupil's compulsory public education to the school district in which the pupil's parent resides. Furthermore, and as the federal district court observed, this interpretation protects a local educational agency serving the geographic area in which a heavily populated county jail like the Los Angeles County jail is located from becoming overwhelmed by the financial responsibility for educating eligible young adult inmates whose parents reside in other districts. (See *Los Angeles Unified School District v. Garcia, supra,* 669 F.3d at p. 961.)

Our construction of section 56041 likewise comports with the special education scheme generally. As previously mentioned, a court interpreting a statute to best effectuate its intent does not view the provision in isolation, but rather " 'in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' [Citation.]" (*Prospect Medical Group Inc. v. Northridge Medical Group* (2009) 45 Cal.4th 497, 506.) Viewing the statute through that broader lens, we conclude that our construction furthers the overarching purpose of the statutory scheme as a whole, which, as already discussed, is to ensure that there is a clearly designated educational agency responsible for providing eligible individuals "the right to an appropriate educational opportunity to meet their unique needs." (§ 56000, subd. (a); cf. *Prospect Medical Group Inc. v. Northridge Medical Group, supra,* at

22

pp. 506-507 [looking to the Knox-Keene Act as a whole to conclude that one of its provisions, Health & Saf. Code, § 1379, applied to a situation that did not exist at the time of its enactment].)

We further observe that although the special education framework includes specific provisions that render section 56041 inapplicable in institutional settings that are similar to county jails, there is no inconsistency between the existence of those statutes and applying the more general terms of section 56041 to designate responsibility for providing special education to an eligible 18 to 22 year old who is incarcerated in county jail. With regard to institutional settings like juvenile court schools, the Legislature has specifically considered the unique characteristics of the particular educational environment and designated the entity responsible for providing special education in those facilities accordingly. There is no indication that the Legislature has specifically considered the delivery of special education programs to eligible young adult inmates in county jail. Unless and until the Legislature chooses to adopt a special rule to govern responsibility in that setting, there is nothing impermissible or incongruous about designating the entity responsible for special education programs in county jail in accordance with the more general terms of section 56041.

As for the statutes cited by amicus curiae California School Boards Association that govern the delivery of *general* education programs in adult correctional facilities, we agree with Garcia that there are no inherent contradictions between the provisions. As a matter of IDEA and state law policy, a FAPE typically is provided in an educational environment with nondisabled students. (20 U.S.C. § 1412(a)(5)(A); § 56040.1, subd. (a); see § 56000, subd. (c); see also *San Francisco Unified School Dist. v. State of California* (1982) 131 Cal.App.3d 54, 70 [the "mainstreaming policy" reflects a "basic goal of the Act to educate handicapped children in the 'least restrictive environment' possible"].)

23

Under the Education Code, a county superintendent of schools, with the assent of the county's board of education and board of supervisors, may establish and maintain classes or schools for inmates in its county's jails and other correctional facilities. (§§ 1900, 1905-1906.) In addition, a county's board of supervisors is authorized to assign to any school district maintaining secondary schools the responsibility for operating such classes or schools in a county jail. (§ 1907.) These statutes are not necessarily inconsistent with allocating responsibility for providing special education to an eligible county jail inmate to the school district in which the eligible inmate's parent resides; rather these statutes provide a structure within which the school district responsible for providing a special education program can work together with the entity operating a general education program in the same facility.

L.A. Unified asserts finally that applying section 56041 to assign responsibility for providing special education programs to eligible county jail inmates would lead to absurd, unworkable results. According to L.A. Unified, requiring the school district where an eligible inmate's parent resides to provide special education in the county jail where the inmate is incarcerated presents significant logistical concerns, especially for school districts that are geographically distant from the county jail. L.A. Unified maintains that such districts would face uncertain staff and service obligations, and there could be delays in services and barriers to the quick resolution of disputes between the school district and the inmate. L.A. Unified warns furthermore that jail administrators would face staffing and security issues in the event personnel from numerous school districts were to simultaneously converge on the jail facility to provide special education programs to their respective pupils.

L.A. Unified is correct that under settled principles of statutory construction, a court is obligated to avoid a construction that would lead to impractical or

unworkable results. (*Commission on Peace Officer Standards and Training v. Superior Court* (2007) 42 Cal.4th 278, 290.) We are not persuaded, however, that construing section 56041 to designate the entity responsible for providing special education to an eligible 18- to 22-year-old county jail inmate would result in unworkable or absurd consequences. L.A. Unified's argument describing the various difficulties that could arise when many, perhaps distant, school districts are assigned responsibility for providing special education to eligible 18- to 22-year-old pupils who are incarcerated in a single county jail raises valid, palpable concerns. But none of the identified problems is insurmountable or renders the construction of section 56041 unworkable. In this regard, we agree with Garcia that any potential difficulties arising from designating the school district in which the county jail inmate's parent resides as the entity responsible for providing special education and related services in a county jail may be overcome by the school district's ability to contract with another school district or agency to deliver the necessary services. Local educational entities like school districts are statutorily authorized to enter into agreements with other public agencies to provide special education to an eligible pupil and routinely enter into such contracts. (See § 56369.) Our review of the special education scheme discloses furthermore that in a number of settings the Legislature has imposed on school districts the responsibility for funding special education programs for eligible pupils who reside within the geographic boundaries of another district or even another state. (See §§ 56365, subds. (d)-(i) [assigning to the local educational agency the responsibility for funding the full amount of tuition for a pupil properly placed in a nonpublic, nonsectarian school, including schools located outside of the state], 56195.5, subd. (b) [authorizing a local educational agency to provide for the special education of individual pupils through programs maintained by other districts or counties].)

Amicus curiae California School Boards Association cautions that even were another school district or entity willing to contract with the school district in which the eligible county jail inmate's parent resides, there are no guarantees such an agreement would adequately discharge the responsible school district's obligations under our state law and the IDEA. The California School Boards Association argues that because correctional institutions are penological rather than educational in nature, they present distinctive and significant program-implementation issues that could impact the delivery of an inmate's special education program, placing school districts at risk of being held liable for the denial of a FAPE to a qualified individual. The association's concerns do not render our interpretation of section 56041 unworkable, however. When a school district contracts with certain entities, for example, with a nonpublic, nonsectarian school, to provide special education and related services that the school district cannot itself provide, the Legislature has ensured that such arrangements will comply with required policies and procedures by clarifying the necessary terms and respective duties to be set forth in master contracts between the school district and the other entity. (See, e.g., § 56366, subd. (a) [required terms of agreements between local educational agencies and nonpublic, nonsectarian schools or agencies].) Although there is no specific statutory provision setting forth the required terms of a contract between school districts and other entities for the provision of special education services in county jails, a school district is not without any guidance in this matter. For example, many of the terms for agreements with nonpublic, nonsectarian schools mandated by section 56366, subdivision (a), could be imported into existing agreements for the *general* education of county jail inmates pursuant to sections 1900 through 1909.5. (See also § 1259 [regarding agreements for educating inmates under the jurisdiction of the Department of Corrections and Rehabilitation].) If any additional guidance or

26

clarification is needed, school districts are free to seek further action by the Legislature.

## CONCLUSION

An individual with a qualifying disability who is between the ages of 18 and 22 years and has met certain specified prerequisites is entitled to continue his or her special education program while incarcerated in a county jail. Although the Legislature has expressly designated the entity responsible for providing special education and related services to eligible pupils residing in various institutional settings such as juvenile court schools, it has not adopted a similar narrow statute applicable to the county jail setting. In the absence of such legislative action, we conclude for the reasons explained above that the assignment of responsibility for providing special education to eligible county jail inmates between the ages of 18 and 22 years is governed by the terms of section 56041.

CANTIL-SAKAUYE, C. J.

WE CONCUR:

KENNARD, J.
BAXTER, J.
WERDEGAR, J.
CHIN, J.
CORRIGAN, J.
LIU, J.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Los Angeles Unified School District v. Garcia

---

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**

---

**Opinion No.** S199639
**Date Filed:** December 12 , 2013

---

**Court:**
**County:**
**Judge:**

---

**Counsel:**

Diane H. Pappas, Donald A. Erwin, Mampre R. Pomakian; Littler Mendelson, Barrett K. Green and Daniel Gonzalez for Plaintiff and Appellant.

Keith Bray, Elaine Yama-Garcia; Vu Vaccaro, Van T. Vu and Kourtney Vacaro for California School Boards Association and its Education Legal Alliance as Amici Curiae on behalf of Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Manuel M. Medeiros, State Solicitor General, Alicia Fowler, Acting Chief Assistant Attorney General, Julie Weng- Gutierrez, Assistant Attorney General, Susan M. Carson, Acting Assistant Attorney General, Niromi W. Pfeiffer, Glenda N. Reager and Ismael A. Castro, Deputy Attorneys General, for the California Department of Education as Amicus Curiae on behalf of Plaintiff and Appellant.

Disability Rights Legal Center, Paula D. Pearlman, Michelle Uzeta, Anna Rivera; Milbank, Tweed, Hadley & McCloy, Linda Dakin-Grimm, Daniel M. Perry, Delilah Vinzon and Hannah L. Cannom for Defendant and Respondent.

Youth & Education Law Project, William S. Koski and Carly J. Munson for Children's Rights Clinic at Southwestern Law School, Disability Rights Advocates, Disability Rights California, Learning Rights Law Center, Law Foundation of Silicon Valley, Loyola Law School, Center for Juvenile Law and Policy and Public Counsel Law Center as Amici Curiae on behalf of Defendant and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Barrett K. Green
Littler Mendelson
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
(310) 553-0308

Julie Weng- Gutierrez
Assistant Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244-2550
(916) 323-8203

Delilah Vinzon
Milbank, Tweed, Hadley & McCloy
601 Figueroa Street, 30th Floor
Los Angeles, CA 90017
(213) 892-4000