Filed 4/4/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| 1300 N. CURSON INVESTORS, LLC, | B250618 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC485465) |
| v. | |
| CECILIA DRUMEA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County. Michelle R. Rosenblatt, Judge. Reversed and remanded.

Pircher, Nichols & Meeks and James L. Goldman for Plaintiff and Appellant.

The Salem Law Firm and Edmond E. Salem for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

This appeal concerns the amount of rent that may be charged under the City of Los Angeles Rent Stabilization Ordinance (L.A. Mun. Code, ch. XV, art. 1, § 151.00 et seq.; hereafter the Ordinance) to a former resident manager upon termination of managerial services. The former resident manager was already a tenant in the unit before being appointed resident manager and continued to occupy the unit after being relieved of managerial duty.

Landlord 1300 N. Curson Investors, LLC (plaintiff) sued former resident manager Cecilia Drumea and her mother, Elena Drumea (defendants), seeking declaratory relief, ejectment and damages. The day before plaintiff purchased an apartment building subject to the Ordinance, the former owner relieved Cecilia from her position as the resident manager. Defendants were already tenants in the unit before Cecilia was appointed resident manager, paying $850 per month. During the years Cecilia served as the resident manager, she occupied the unit rent-free in compensation for her services. After Cecilia was relieved of duty, plaintiff served defendants with a notice of rent increase, raising the monthly rent to $1,552.03, which included all of the annual adjustments permitted under the Ordinance that had accrued over the years Cecilia was manager. Defendants refused to pay the increased rent, claiming plaintiff could not collect more than $850 per month. The trial court denied plaintiff's motion for summary judgment, and the parties stipulated to entry of judgment in defendants' favor to facilitate appellate review.

We reverse, finding that plaintiff was entitled to collect $1,552.03 per month and the notice of rent increase was valid because plaintiff correctly calculated the permissible rent increase under the regulations promulgated by the City of Los Angeles Rent Adjustment Commission (Commission), which issues policies, rules and regulations to effectuate the purposes of the Ordinance. The Commission Regulations and Guidelines, regulation 925.03 provides "if the resident manager was already a tenant in the unit before being appointed resident manager, the rent charged to the resident manager upon termination of managerial services shall not exceed the rent the tenant had already been paying plus annual adjustments authorized under the [Ordinance]." There was no dispute

that plaintiff correctly calculated the annual adjustments authorized under the Ordinance for each year Cecilia served as resident manager.

Pursuant to the parties' stipulation for entry of judgment, plaintiff is entitled to collect $1,552.03 per month beginning the first month following the month in which this decision becomes final, and plaintiff may not recover damages for the difference between that amount and the $850 that defendants agreed to pay during the pendency of this appeal. We find the stipulation for entry of judgment implicitly establishes that plaintiff is not entitled to ejectment unless and until defendants fail to tender $1,552.03 when it becomes due, at which time plaintiff must initiate unlawful detainer proceedings in conformance with all applicable laws in order to evict defendants.

## BACKGROUND

The following are the pertinent facts to which the parties agreed in their stipulation for entry of judgment. Plaintiff purchased the apartment building located at 1300 N. Curson Avenue in Los Angeles, on July 1, 2011. Defendants had lived in a unit in that building since December 15, 1992. Cecilia served as the resident manager for the building from December 1993 until June 30, 2011. She was terminated effective June 30, 2011, by the previous owner.

Before Cecilia became the resident manager, defendants' rent was $850 per month, under a lease dated December 13, 1992. When Cecilia served as resident manager she did not pay rent; rather, she provided managerial services in lieu of rent. While Cecilia occupied the unit rent-free, the previous owners did not serve defendants with notices of the rent increases that they would have been required to serve if they were collecting rent from defendants, nor with the annual registration statements issued by the Los Angeles Housing Department (Department). However, the previous owners mailed the annual registration statements to Cecilia, and it was her duty to serve these statements on the other tenants in her capacity as resident manager.

On December 31, 2011, defendants were served with a notice of rent increase, charging rent of $1,552.03 per month, commencing on March 1, 2012. Defendants did not comply with the notice, claiming it was invalid, and instead tendered rent of $850 on

3

several occasions. Their tenders were rejected by plaintiff. On March 8, 2012, plaintiff served defendants with a three-day notice to quit or pay rent demanding rent of $1,552.03. Defendants did not pay the amount demanded in the notice. Instead, they have paid $850 per month during the pendency of this dispute pursuant to agreements preserving plaintiff's claims and defendants' claims and defenses.

Defendants submitted a complaint to the Department. After receiving correspondence from the parties, the Department stated its view that the allowable increase for the period of July 1, 2011, through June 30, 2012, was 3 percent, and that the proposed increase to $1,552.03 from $850 exceeded this allowable increase. In September 2012, the Department closed defendants' case because plaintiff had filed this lawsuit on May 29, 2012.

On January 9, 2013, plaintiff filed a motion for summary judgment or summary adjudication, seeking a declaration that it was permitted to raise defendants' rent to $1,552.03 per month. Defendants opposed the motion on the ground that their rent reverted to the $850 per month they had paid before Cecilia became resident manager because the former owners did not serve them with any notices of allowable annual rent increases. Defendants also contended that the rent increase was cumulative and retroactive in violation of the Ordinance.

The trial court denied the motion, after which the parties stipulated to entry of judgment to facilitate appellate review of the applicable provisions of the Ordinance and regulations and guidelines promulgated by the Commission. Pursuant to the parties' stipulation, defendants were to tender rent of $850 per month from July 2011, and so long as defendants paid that amount of rent on a timely basis, plaintiff would not seek to recover damages if it prevailed in this appeal. Additionally, they stipulated that if plaintiff prevails in this appeal, the rent increase will be valid beginning the first month following the month in which our decision becomes final.

The trial court entered judgment for defendants in accordance with the stipulation. Plaintiff filed a timely notice of appeal.

4

**DISCUSSION**

We review de novo pure questions of law based on undisputed facts, including questions of statutory construction. (*Weingarten Realty Investors v. Chiang* (2012) 212 Cal.App.4th 163, 167-168.)

The cannons of statutory construction apply to local ordinances. (*City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1490.) "[W]e begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, the court turns first to the words themselves for the answer. We are required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole." (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 505.) When provisions cannot be harmonized, particular or specific provisions will generally take precedence over conflicting general provisions. (Code Civ. Proc., § 1859; *Agricultural Labor Relations Bd. v. Superior Court* (1976) 16 Cal.3d 392, 420.) When construing a statute, the "court is obligated to avoid a construction that would lead to impractical or unworkable results." (*Los Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 194.)

In 1978, the Los Angeles City Council enacted the Ordinance to regulate rent increases caused by a housing shortage. (*Klarfeld v. Berg* (1981) 29 Cal.3d 893, 895-896.) The legislative purposes of the Ordinance are set forth in Los Angeles Municipal Code section 151.01, which provides: "There is a shortage of decent, safe and sanitary housing in the City of Los Angeles resulting in a critically low vacancy factor. [¶] . . . [¶] Therefore, it is necessary and reasonable to regulate rents so as to safeguard tenants from excessive rent increases, while at the same time providing landlords with just and reasonable returns from their rental units."

The Ordinance provides many tenant protections. Some of the significant tenant

protections are those limiting the amount of annual rent increases,[1] providing for a reduction in rent when there has been a reduction in services, prohibiting eviction of a tenant except for good cause, and requiring landlords to provide relocation assistance in specified circumstances. (L.A. Mun. Code, ch. XV, §§ 151.00-151.30.) The Ordinance also specifies the notice a landlord must give a tenant in advance of any annual rent increase and requires the landlord to serve upon the tenant a valid registration statement demonstrating the tenant's unit is duly registered with the Department. (See § 151.05.)

The Ordinance prohibits a landlord from charging cumulative or retroactive rent increases. (See L.A. Mun. Code, § 151.06.) So, for example, if the Ordinance permitted a 3 percent rent increase in 2011, and another 3 percent increase in 2012, a landlord who did not raise the rent in 2011 may only raise the rent in 2012 by 3 percent, and may not retroactively collect the increase permitted in 2011 for a cumulative rent increase of 6 percent in 2012. The Ordinance makes it "unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent permitted pursuant to this chapter or regulation or orders adopted pursuant to this chapter." (§ 151.04, subd. A.)

The Ordinance gave the Commission the authority to promulgate policies, rules

---

[1]    "For a rental unit which at any time on or after the operative date of this chapter has not had a rent increase for a period of twelve consecutive months or more []other than one lawfully imposed pursuant to Section 3B(5) or (6) of Ordinance No. 151,415, as amended, and/or pursuant to Subsection E. of this section and/or pursuant to Section 151.07 of this chapter. [¶] The maximum rent or maximum adjusted rent may be increased in an amount based on the Consumer Price Index – All Urban Consumers averaged for the twelve (12) month period ending September 30, of each year, as determined and published by the Department on or before May 30, of each year, pursuant to Section 151.07 A.6. of this chapter. This annual adjustment may be applied to any annual rent increase which first becomes effective on or before July 1, through June 30, of each year. If the landlord pays all the costs of electricity and/or gas services for a rental unit then the maximum rent or maximum adjusted rent may be increased an additional one percent (1%) for each such service paid by the landlord, not to exceed a total of two percent (2%). If a rent increase had been imposed pursuant to Subsection A., B., C. or F.1., of this section, then no rent increase may be imposed pursuant to this subsection until twelve (12) consecutive months or more have elapsed since such rent increase." (L.A. Mun. Code, § 151.06, subd. D.)

and regulations to effectuate the purposes of the Ordinance. (See L.A. Mun. Code, § 151.03.) In 1986, the Commission issued regulations concerning permissible annual rent percentage increases. (Reg. 360.00 et seq.) Regulation 362.01 requires landlords to provide to each tenant printed information from the Commission stating the annual rent increase percentage authorized for that calendar year, and the effective dates for the increase. Regulation 362.02 provides that "no landlord shall demand or accept rent without first giving each tenant a copy of the rent registration certificate containing the printed explanation of the annual automatic rent increase supplied by the Department."

The Ordinance also specifically vests the Commission with authority to "promulgate regulations to determine the appropriate maximum adjusted rent on a rental unit when the tenant of a rental unit was, but no longer is, the resident manager, and when a rental unit, formerly occupied by a resident manager, is offered for rent to another person." (L.A. Mun. Code, § 151.08, subd. E.) In 1982, the Commission issued regulations pertaining to "[m]anagers as [t]enants." (See Com. Regs. and Guidelines, reg. 920.00 et seq.) These regulations provide that resident managers are entitled to the protections of the Ordinance. (Reg. 920.01.)

The Commission issued special regulations to determine the maximum allowable rent increase that a landlord may charge a former resident manager who continues to occupy a unit after her services have terminated. Regulation 925.03 provides "if the resident manager was already a tenant in the unit before being appointed resident manager, the rent charged to the resident manager upon termination of managerial services shall not exceed the rent the tenant had already been paying plus annual adjustments authorized under the [Ordinance]." If a manager was not a tenant before being appointed resident manager, the rent upon termination of managerial services is either what the landlord and manager contracted for, or "shall be the average of the rents of comparable occupied units in the building." (Reg. 925.01.)

Harmonizing these provisions, it is clear that although resident managers are afforded the many protections of the Ordinance, they are treated differently than other tenants insofar as the allowable rent increase a landlord may collect when they continue

7

to occupy a unit after their management services are terminated. Where other tenants may not be charged a cumulative rent increase, a former manager tenant who already occupied the unit before being appointed resident manager may be charged the rent the tenant had been paying plus annual adjustments authorized under the Ordinance during the years of her service as manager. (Com. Regs. and Guidelines, reg. 925.03.) If the market rent has increased more than the increases allowed under the Ordinance, the former manager tenant is protected from having to pay the prevailing market rental value of the unit. Thus, the provisions for calculating the rent of a former resident manager serve the dual purposes of the Ordinance, to safeguard tenants from excessive rent increases while providing landlords with fair and reasonable returns from their rental units.

Defendants claim that their rent may not be increased because the former owners did not serve them with the annual registration statements and notices of rent increases *during the time that they did not pay rent*. We find it would be impractical to require landlords to serve annual registration statements and notices of rent increases on resident managers who do not pay rent. No express provision of the Ordinance pertaining to rent increases for a former manager who was previously a tenant provides that the landlord must have given notices of what-the-rent-increase-would-have-been-if-you-were-paying-rent. Nothing in the Ordinance suggests an intent to require a landlord to give notice of theoretical rent increases to a manager who does not pay any rent. To the contrary, the Ordinance expressly provides how much rent may be increased for a unit occupied by a former resident manager and says nothing about the service of notices during the time the resident manager occupied the unit without paying rent. Moreover, the Commission Regulations and Guidelines, regulation 925.04 requires the landlord to make available to the former resident manager "the rent records used in calculation of the rent of the unit upon termination of the managerial services." This is the way the former resident manager is notified of the basis for the increase in rent over the amount she paid as a tenant before serving as manager.

In contrast to the resident manager who pays no rent, when a manager pays partial

rent, the Commission Regulations and Guidelines, regulation 924.01 specifies that "only the partial rent payments shall be subject to the annual adjustments authorized under the [Ordinance] pursuant to [Los Angeles Municipal Code section] 151.06" and that the "landlord must comply with the notice requirements of . . . Civil Code section 827 prior to any . . . increase in the rent." It logically follows from the requirement that the landlord must give notice of increases in *partial* rent payments that the landlord has no obligation to give notice of what the increase *would have been* if the manager were paying the full rental value of the unit.

Regulation 925.01 provides that the rent of a former resident manager who continues to occupy the unit, who was *not* a tenant of the unit before serving as manager, may be set at the average rent of comparable occupied units in the building. Since the Ordinance specifies the maximum annual rent increase for every rental unit, the city council obviously recognized that rents were likely to steadily increase, thereby increasing the average rent of occupied units in an apartment building. The Ordinance does not require that landlords give notice of the average rent of comparable occupied units during the years the resident manager occupies the unit rent-free.

We also find the Ordinance does not require landlords to serve annual registration statements on resident managers who pay no rent. The provisions of the Ordinance requiring annual registration statements make the "demand" for rent contingent upon issuing them. (See L.A. Mun. Code, § 151.05, subd. A.) Here, no rent was demanded from defendants; Cecilia provided services in lieu of rent. If Cecilia had paid partial rent, then the regulations would have required that she receive notice of annual rent increases and registration statements. (Com. Regs. and Guidelines, reg. 924.01.) But she and her mother occupied their unit rent-free. In any event, Cecilia received the annual registration statements and served them each year on the tenants specified by the former owner, so she knew the former owner had lawfully registered the occupied units.

We conclude that a former resident manager who was already a tenant in the unit before being appointed resident manager may be charged rent upon termination of managerial services in the amount of the rent the former manager had been paying as a

9

tenant, plus the annual adjustments authorized under the Ordinance, and the landlord has no obligation to serve annual registration statements or notices of rent increases during the period that the former manager occupied the unit rent-free. Therefore, the judgment must be reversed, and plaintiff is entitled to an order granting summary adjudication in its favor on its cause of action for declaratory relief. In this case, however, that does not mean that defendants are required to pay the difference in rent, or suffer ejectment for nonpayment of rent during the pendency of this case, because in the stipulation for entry of judgment, the parties agreed that plaintiff would not seek damages, and that rent in the amount of $1,552.03 would be due beginning the first month after the month in which this decision becomes final. Plaintiff will not be entitled to ejectment for nonpayment of rent unless and until defendants fail to tender $1,552.03 when it becomes due, at which time plaintiff must initiate unlawful detainer proceedings in conformance with all applicable laws in order to evict defendants.

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court. The trial court is ordered to enter an order granting summary adjudication on the cause of action for declaratory relief, declaring the December 2011 notice of rent increase was valid and may be enforced. Appellant shall recover its costs on appeal.


GRIMES, J.

We concur:

BIGELOW, P. J.


FLIER, J.


10