Filed 12/16/15 Unmodified opinion attached

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF<br>LOS ANGELES COUNTY,<br><br>    Respondent;<br><br>MARIA SANCHEZ-FLORES,<br><br>    Defendant and Real Party in<br>Interest. | B266289<br><br>(Los Angeles County<br>Super. Ct. No. BS153534)<br><br>ORDER MODIFYING OPINION<br>AND DENYING REHEARING<br>[NO CHANGE IN JUDGMENT] |

The opinion filed on November 24, 2015, is modified as follows:


1.     In the caption, The People of the State of California are re-designated "Plaintiff and Petitioner," The Superior Court of Los Angeles County is re-designated "Respondent;" and Maria Sanchez-Flores is re-designated "Defendant and Real Party in Interest."

2.      On page 1, lines 4 through 9 are deleted and the following is inserted in its place:

Jackie Lacey, District Attorney, Phyllis Asayama and Beth L. Widmark, Deputy District Attorneys for Plaintiff and Petitioner.

No appearance for Respondent.

Ronald L. Brown, Public Defender, Albert J. Menaster, Head Deputy
Public Defender, Keyvan Shakeri, Deputy Public Defender for Defendant and
Real Party in Interest.

The Petition for Rehearing is denied.  No change in judgment.

_____

BAKER, J.                    MOSK, Acting P.J.                    KIRSCHNER, J. [*]

---

[*]      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to
article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | No. B266289 |
| Plaintiff and Appellant, | (Super. Ct. No. BS153534) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Defendant; | |
| MARIA SANCHEZ-FLORES, | |
| Real Party in Interest and Respondent. | |

Petition for writ of mandate after transfer from the Appellate Division of the Superior Court of Los Angeles County, Patti Jo McKay, Barbara R. Johnson, Anita Dymant, Judges. Reversed and remanded.

Jackie Lacey, District Attorney, John Spillane, Chief Deputy District Attorney, Pamela Booth, Assistant District Attorney, and Beth L. Widmark, Deputy District Attorney for Plaintiff and Appellant.

Albert Mensaster, Head Deputy Public Defender, and Ronald L. Brown, Public Defender for Real Party in Interest and Respondent.

No appearance for Defendant.

The Legislature enacted a statute that establishes a Deferral of Sentencing Pilot Program in Los Angeles County for defendants charged with certain misdemeanor offenses. This case presents an important question of law that we consider pursuant to California Rules of Court, rule 8.1002: must a defendant pay the fines that a misdemeanor charge would otherwise call for in order to obtain the relief contemplated by the pilot program, namely, an order striking the defendant's guilty or no contest plea and dismissing the charge? We decide the answer to that question is no.

## I. BACKGROUND

### A. *Legislative Background*

As enacted at Penal Code sections 1001.94-1001.99,[1] Assembly Bill 2124 (AB 2124) created a "Deferral of Sentencing Pilot Program" (Sentence Deferral Program) in Los Angeles County. The Sentence Deferral Program became effective on January 1, 2015, and it is scheduled to automatically sunset on the first of the year in 2018.

At the time AB 2124 was drafted, multiple diversion programs and one deferred entry of judgment program already existed. The best known of these programs are deferred entry of judgment and pretrial diversion programs for defendants accused of specified narcotics-related offenses. (§§ 1000-1000.10.) Other programs include: (1) diversion for individuals suspected of physical child abuse or neglect (§ 1000.12); (2) diversion of defendants with cognitive developmental disabilities (§§ 1001.20-1001.34); (3) diversion of suspected traffic violators, commonly referred to as "traffic school" (§ 1001.40); (4) diversion for individuals suspected of writing bad checks (§§ 1001.60-1001.67); diversion for parents suspected of contributing to the delinquency of a minor in violation of section 272 (§§ 1001.70-1001.75); and (5) diversion for members of the United States military who might be suffering from service-related mental health issues

---

[1] Undesignated statutory citations that follow are to the Penal Code.

(§ 1001.80). In addition, the Legislature authorized counties to create a general misdemeanor diversion program. (§§ 1001.50-1001.55.)

"[P]retrial diversion refers to the procedure of postponing prosecution of an offense filed as a misdemeanor either temporarily or permanently at any point in the judicial process from the point at which the accused is charged until adjudication." (§ 1001.1.) Thus, as the author of AB 2124 recognized, "'A prosecutor has the sole discretion to charge a defendant with a crime, and existing misdemeanor diversion programs are largely authorized and administered at the discretion of a prosecuting attorney.'" (Assem. Com. on Public Safety, Rep. on Assem. Bill No. 2124 (2013-2014 Reg. Sess.) Apr. 21, 2014, p. 2.) AB 2124, however, was drafted to provide courts with explicit authority to order deferred sentencing after a defendant's guilty or no contest plea, over a prosecuting attorney's objection. The author explained: "[T]he court arguably has equal discretion to issue a sentence once a plea has been entered or a verdict rendered. [¶] In line with this precedent, AB 2124 provides courts with explicit authority to defer sentencing of a defendant who has pled guilty or 'no contest' to a misdemeanor." (*Ibid.*)

B. *The Trial Court Proceedings*

On January 7, 2015, defendant Maria Sanchez-Flores (defendant) requested placement in a diversion program after she pled no contest to one count of possessing or permitting the operation of a slot machine in violation of Penal Code section 330.1, subdivision (a), a misdemeanor. The trial court and the prosecution agreed that defendant met the requirements for deferred sentencing pursuant to the Sentence Deferral Program.

Section 330.1, subdivision (e), provides that if "the offense involve[s] more than one machine or more than one location, an additional fine of not less than one thousand dollars ($1,000) nor more than five thousand dollars ($5,000) shall be imposed per

3

machine and per location."[2]  The prosecution contended that the statutes governing the Sentence Deferral Program, specifically section 1001.94, subdivision (f),[3] required the court to order defendant to pay the mandatory minimum $2,000 fine section 330.1 requires as well as other mandated assessments—even if she successfully completed the community service obligation the trial court was inclined to order and complied with other conditions set by the court.

The trial court disagreed.  The trial court ordered defendant to perform 150 hours of community service within 12 months, to obey all laws and orders of the court, and to not incur any new convictions.  The court informed defendant that if she failed to comply with the court's conditions, she would be sentenced to three years' probation and required to pay the $2,000 fine for the two slot machines she possessed.

C. *Proceedings in the Appellate Division*

The Los Angeles County District Attorney's Office (the Office) filed a petition for writ of mandate in the appellate division of the superior court to require the trial court to impose the $2,000 fine and other assessments.  The appellate division decided the writ should issue.

Focusing its attention on section 1001.94, subdivision (f), the appellate division explained that "[t]he Legislature clearly and unequivocally stated its intent—namely, that the court shall order the defendant to complete the same obligations as though judgment

---

[2]　Not all misdemeanors have such mandatory minimum fines.  Many misdemeanor offenses specify only the maximum fine which may be imposed.  Simple battery, for example, is "punishable by a fine not exceeding two thousand dollars ($2,000), or by imprisonment in the county jail not exceeding six months, or by both that fine and imprisonment."  (§ 243, subd. (a).)

[3]　Section 1001.94, subdivision (f) states:  "It is the intent of the Legislature . . . that judges shall order a defendant, for whom judgment is deferred, to complete the same obligations that would have been imposed had judgment been entered.  The only difference between this chapter and current practice is that under this chapter judgment will not be entered."  We describe the full statutory scheme enacted by AB 2124, of which section 1001.94, subdivision (f) is one part, *post*, at pages 6-8.

4

had not been deferred." Convinced that any other reading of the statutory scheme would render section 1001.94, subdivision (f) mere surplusage, the appellate division concluded the trial court erred when it did not require defendant to pay the $2,000 fine section 330.1 requires of a person found guilty of violating the section's terms. In the appellate division's view, a defendant must pay the penalty that a misdemeanor statute requires before the defendant is entitled to have his or her plea stricken and the case dismissed. The appellate division concluded that the result it reached was consistent with its view of the purpose of the Sentence Deferral Program, namely, permitting defendants "to avoid the moral obloquy, but not the obligations, attached to a criminal record, especially as it hinders access to employment."

After the appellate division issued its opinion, we transferred the case to this court pursuant to California Rules of Court, rule 8.1002.

## II. DISCUSSION

A. *Standard of Review and Principles of Interpretation*

Our task here is statutory interpretation. Review is de novo, *People v. Prunty* (2015) 62 Cal.4th 59, 71, and the guidelines we follow are well-established.

"In interpreting a statutory provision, 'our task is to select the construction that comports most closely with the Legislature's apparent intent, with a view to promoting rather than defeating the statutes' general purpose, and to avoid a construction that would lead to unreasonable, impractical, or arbitrary results.' [Citation.]" (*Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1385 (*Poole*).) Because the best evidence of the Legislature's intent is the statutory text itself, that is where our inquiry begins; if the text is unambiguous, that is also where our inquiry ordinarily ends. (*Even Zohar Const. & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837-838 ["We begin as always with the statute's actual words, the 'most reliable indicator' of legislative intent, 'assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature

5

meant what it said, and the statute's plain meaning governs'"]; but see *Los Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 186 [plain meaning does not govern if a literal interpretation would result in absurd consequences].)

We do not, however, read the text of statutory provisions in isolation. (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 276.) Context is important. We take a comprehensive approach, looking at the overall statutory scheme to discern the meaning of the provisions in question and to harmonize, wherever possible, statutory provisions concerning the same subject matter. (*Ibid.* [a statute should be read with reference to the entire scheme of law of which it is a part and with an eye to the object to be achieved or the evil to be prevented]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 ["The meaning of a statute may not be determined from a single word or sentence; the words must be construed in context, and provisions relating to the same subject matter must be harmonized to the extent possible"]; see also *Poole, supra*, 61 Cal.4th at p. 1391 (conc. opn. of Cuéllar, J.) [context, or the statutory structure and the words of surrounding or related provisions, can help illuminate the plain meaning of a statute].)

With these principles in mind, we review the statutory scheme enacted by AB 2124, focusing not only on section 1001.94, subdivision (f), but on the language and structure of the related provisions that establish the Sentence Deferral Program.

B. *The Statutory Scheme and the Meaning of Section 1001.94, subdivision (f)*

Five statutory sections, 1001.94 through 1001.98, govern the operation of the Sentence Deferral Program.[4]

The main substantive provision is section 1001.94, which establishes the program, describes who is eligible to participate, and states what a trial court may and must order when deferring sentencing for a defendant who has entered a guilty or no contest plea. Subdivision (d) provides that first-time misdemeanor defendants (except as later excluded

---

[4]      A sixth section, section 1001.99, states that the program is automatically repealed on January 1, 2018, barring legislative action to the contrary.

in section 1001.98) are eligible to participate in the Sentence Deferral Program "in order to reduce the stigma that is often associated with a criminal record and to increase the likelihood that a defendant will be able to obtain employment."  Subdivision (b) states that a Los Angeles County superior court judge may, "at his or her discretion and over the objection of a prosecuting attorney," defer sentencing for a qualifying misdemeanor defendant.  A trial judge may defer sentencing for up to 12 months, and subdivision (b) permits a trial court judge to order the defendant to "comply with terms, conditions, or programs that the judge deems appropriate" during the period when sentencing is deferred.

Section 1001.94, subdivision (f) is an express statement of the Legislature's intent regarding what a trial court acting pursuant to the Sentence Deferral Program must do. Subdivision (f) states:  "It is the intent of the Legislature that no new diversion programs are created, and that judges shall order a defendant, for whom judgment is deferred, to complete the same obligations that would have been imposed had judgment been entered. The only difference between this chapter and current practice is that under this chapter judgment will not be entered." (§ 1001.94, subd. (f).)  Section 1001.94 does not define the "obligations" described in subdivision (f), nor does any other provision in the statutory scheme.  Subdivision (f) plainly states the Legislature's desire that a trial court order a defendant to complete the same obligations that the court would have imposed had judgment been entered, but subdivision (f) is silent on the question of when, or indeed whether, a defendant must actually satisfy such obligations to obtain relief under the program.

It is sections 1001.95 and 1001.96 that define the circumstances under which the trial court must grant the relief contemplated by the program, namely striking a defendant's plea and dismissing the action.  Using the identical language ("terms, conditions, or programs") that appears in section 1001.94, subdivision (b), section 1001.96 provides:  "If the defendant, during the period of deferral imposed pursuant to subdivision (a) [*sic*] of Section 1001.94, complies with all terms, conditions, and programs required by the court, then, the judge shall, at the end of the period, strike the

7

defendant's plea and dismiss the action against the defendant." (§ 1001.96, subd. (a).) Section 1001.95 adds additional prerequisites beyond what section 1001.96 specifies. Section 1001.95 states that a defendant whose sentence is deferred must do all of the following to have his or her plea stricken: "(a) Complete all conditions ordered by the court. [¶] (b) Make full restitution. [¶] (c) Comply with a court-ordered protective order, stay-away order, or order prohibiting firearm possession, if applicable." Thus, taken together, sections 1001.95 and 1001.96 require a trial court to strike a defendant's plea and dismiss the action if the defendant completes court-ordered terms, conditions, and programs; makes full restitution; and complies with the specified court orders, if applicable. Neither section 1001.95 nor section 1001.96 make any reference to the "obligations" specified in subdivision (f) of section 1001.94.

Section 1001.97 tells prosecuting attorneys and trial court judges what they must do in the opposite circumstance, namely, when a defendant demonstrates that he or she does not merit relief under the Sentence Deferral Program. The section states: "If, during the period of deferral imposed pursuant to subdivision (a) [*sic*] of Section 1001.94, the defendant reoffends or fails to comply with the terms, conditions, or programs required by the court, then the court, the probation officer, or the prosecuting attorney shall make a motion for entry of judgment, and the court shall sentence the defendant as if deferral had not occurred." (§ 1001.97.) Again, section 1001.97 uses the same "terms, conditions, or programs" terminology that appears in section 1001.94, subdivision (b), and section 1001.97 makes no reference to the "obligations" that section 1001.94, subdivision (f) mentions.[5]

Viewed in the context of the full statutory scheme, we readily discern the meaning of section 1001.94, subdivision (f). That subdivision does not require a defendant to serve part or all of the sentence called for by a misdemeanor statute (here, payment of the

---

[5]    The last of the five sections at issue, section 1001.98, limits the circumstances in which a trial court may offer deferral of sentencing, including when incarceration is mandatory upon the defendant's conviction of a misdemeanor offense. (§ 1001.98, subd. (c).)

8

$2,000 fine under section 330.1) to be entitled to have his or her plea stricken and the case dismissed; that would not be a deferral of sentencing. Rather, subdivision (f) states the Legislature's intent that a trial court select the same sentence that it would have imposed if the defendant were not participating in the Sentence Deferral Program, but defer imposition of that sentence unless and until the defendant fails to meet the requirements of the program and judgment is actually entered. This ensures that a defendant will know the consequences of failing to successfully complete the program. It also helps to ensure that unsuccessful participation in the Sentence Deferral Program does not increase a defendant's ultimate sentence.

Interpreting subdivision (f) as we do harmonizes all the statutory provisions that establish how the Sentence Deferral Program should operate. A defendant pleads guilty or no contest to a qualifying misdemeanor charge. (§ 1001.94, subd. (b).) A trial court judge states the sentence it would impose for the charge—which should not be any more lenient or onerous simply because the defendant is participating in the Sentence Deferral Program[6]—but defers imposing sentence for up to 12 months. (§ 1001.94, subds. (b), (f).) The trial judge exercises his or her discretion in deciding what appropriate terms, conditions, or programs a defendant must comply with during the period in which sentencing is deferred. (§ 1001.94, subd. (b).) If a defendant completes such terms, conditions, or programs; makes restitution; complies with any protection, stay-away, or firearm prohibition orders; and otherwise refrains from reoffending, the trial court must strike the guilty or no contest plea and dismiss the case. (§§ 1001.95-1001.97.) If the defendant does not, the probation officer, prosecuting attorney, or the court itself must move for entry of judgment and sentence the defendant as if there had been no deferral— that is, impose the same sentence it stated it would impose and not a harsher sentence because of defendant's failure to satisfy the requirements of the program during the period in which sentencing was deferred. (§ 1001.97.)

---

[6] In other words, the court orders the defendant "to complete the same obligations that would have been imposed had judgment been entered." (§ 1001.94, subd. (f).)

9

That is the procedure the trial court correctly followed in this case.  It informed defendant that she would be sentenced to three years' probation and required to pay the $2,000 fine that section 330.1 mandates upon a conviction for possessing two slot machines.  The court, however, deferred sentencing defendant and ordered her to perform 150 hours of community service within 12 months, to obey all laws and orders of the court, and to incur no new convictions.  If defendant complies with the terms and conditions the trial court ordered, it will dismiss the charge and the fine will not be imposed.

C. *The Interpretation Advanced by the Office Is Inconsistent with the Statutory Scheme and Too Narrowly Interprets the Legislative Purpose*

In its briefing before this court, the Office continues to argue that subdivision (f) requires defendant to pay the fines required by the terms of section 330.1, the misdemeanor statute that she violated, to permit the trial court to strike her plea and dismiss the case.  The Office reasons the only "obligation" to which subdivision (f) could be referring is a financial one, namely the $2,000 fine mandated by section 330.1, because section 1001.98, subdivision (e) excludes from the Sentence Deferral Program any defendant whose offense carries a mandatory period of incarceration upon conviction.

As our discussion thus far demonstrates, the Office's understanding of subdivision (f) is inconsistent with the overall statutory scheme.  The statutes at issue repeatedly make clear that the Sentence Deferral Program requires a judge to do just that: defer imposing sentence when acting pursuant to the program.  (E.g., § 1001.94, subd. (b) ["A judge in the superior court of the County of Los Angeles may . . . defer sentencing. . . . "]; § 1001.95 ["A defendant whose sentence is deferred. . . . "]; § 1001.96, subd. (b) ["the arrest upon which sentencing was deferred"]; § 1001.97 ["the court shall sentence the defendant as if deferral had not occurred"]; § 1001.98 ["Deferral of sentencing shall not be offered when any of the following conditions are met. . . . "].)  Compelling a defendant to perform the obligations that arise from violating a penal

10

statute as a prerequisite for striking her plea is not a deferral of sentence but rather the imposition of sentence, at least in part. An interpretation of section 1001.94, subdivision (f) that requires such a result must be rejected as inconsistent with the statutory scheme.

The Office's reading of section 1001.94, subdivision (f) is particularly incongruous with the terms of sections 1001.95 and 1001.96. Payment of fines is not mentioned in section 1001.95, which is titled: "Requirements in order to have plea stricken." Nor is payment of a mandatory minimum statutory fine specified in section 1001.96 as a necessary predicate to trigger the trial court's duty to strike a defendant's plea and dismiss the action. If the Legislature intended payment of mandatory minimum statutory fines—or satisfaction of any other obligation that a defendant faces as punishment for violating a misdemeanor statute—to be a requirement for striking a plea, it certainly knew how to make that clear. It did not.[7]

We are also concerned by the broader ramifications of accepting the Office's reading of the term "obligations" in section 1001.94, subdivision (f). The Office correctly points out that defendants are not eligible for deferral of sentencing if the charged misdemeanor requires incarceration upon conviction. (§ 1001.98, subd. (e).) Imprisonment, however, is authorized but not required for many misdemeanors. (§ 19 ["Except in cases where a different punishment is prescribed by any law of this state, every offense declared to be a misdemeanor is punishable by imprisonment in the county jail not exceeding six months, or by fine not exceeding one thousand dollars ($1,000), or

---

[7]     If the Office's view of section 1001.94, subdivision (f) were correct (that a defendant must endure required statutory punishment before her plea is stricken and the case dismissed), the language the Legislature used in subdivision (f) was an odd choice. Subdivision (f) is not stated as a simple directive to a trial court, as are many other provisions in the statutory scheme (e.g., § 1001.97); instead, subdivision (f) begins with the prefatory statement "It is the intent of the Legislature that. . . . " The Legislature's choice of language seems best understood as clarification that it desired trial court judges to order the sentencing obligations they would order prior to AB 2124's enactment, but to defer sentence and not impose judgment. If the Legislature instead wished to decree that a defendant must serve part or all of the sentence a misdemeanor statute calls for to obtain relief, it could have directly said that.

11

by both"].)  Where a trial judge believes that imprisonment would be warranted (even if not statutorily required) for a misdemeanor defendant who qualifies for the Sentence Deferral Program, we see no statutory or other principled basis to conclude that a fine is an "obligation[] that would have been imposed had judgment been entered" (§ 1001.94, subd. (f)), while imprisonment is not.  Thus, the Office's reading of subdivision (f) would require a trial court in such circumstances to jail the defendant during the period in which sentencing is supposedly deferred but later strike the defendant's plea and dismiss the case if the defendant complies with any other terms, conditions, and programs plus the requirements of section 1001.95.[8]  Such a scenario throws into sharp relief the problems with the Office's interpretation of subdivision (f).  It conflicts with the very concept that underlies the statutory scheme, a deferral of sentencing.[9]

The Office's interpretation is also inconsistent with the Legislature's stated purpose in enacting the Sentence Deferral Program.  Section 1001.94, subdivision (d) provides, in relevant part:  "This chapter shall apply to first-time misdemeanor defendants . . . in order to reduce the stigma that is often associated with a criminal record and to increase the likelihood that a defendant will be able to obtain employment."  The Office argues its interpretation of section 1001.94, subdivision (f) is consistent with this statement of purpose because the statutory scheme "is not a path to avert all punishment," only a way of avoiding a criminal record.  That, however, is an unnecessarily cramped view of the purpose of the Sentence Deferral Program.

---

**8**    It is difficult to conceptualize how this would work in practice.  Perhaps a court would first permit the defendant to complete any additional terms, conditions, or programs that the court ordered.  Once those terms, conditions, and programs were completed, the defendant would then have to suffer the punishment imposed by statute, namely jail time, or jail time and a fine.  Only then could his or her guilty plea be stricken and the action dismissed.

**9**    The Office's argument would also render the Sentence Deferral Program unique among other deferral of judgment and diversion programs the Legislature has enacted.  In no other such programs does the Legislature require a defendant to suffer the punishment for a charged offense in order to receive the benefits of the program.  See, *ante*, at pages 2-3 (listing programs).

12

In those cases where a trial judge believes that imprisonment is warranted for a Sentence Deferral Program defendant's misdemeanor violation, requiring the defendant to serve the jail sentence before striking her plea is not conducive to reducing stigma or increasing the likelihood of employment. A defendant who is employed when she commits a misdemeanor would often lose her job if she had to miss work to complete the time in custody, even if she did not have to tell her employer that she had been arrested. If a defendant were out of work at the time of the commission of the offense, time spent in jail would be time she could not spend looking for employment. And even where jail time is not imposed, compelling a defendant to pay substantial fines may also have adverse consequences on a defendant's ability to obtain employment, especially for those with tight budgets who may not be able to afford to commute to and from work if forced to pay a fine.[10]

Moreover, the Office's narrow view of the purpose of the Sentence Deferral Program would effectively treat the statutory scheme as an expungement regime, and an unnecessarily elaborate one at that. Expungement has long been available to misdemeanor defendants who have been granted and successfully completed probation, as well as to misdemeanor defendants who have served a sentence and not incurred any new criminal charges for a period of one year after completion of the sentence. (§§ 1203.4, 1203.4a.) While some consequences remain after expungement of the conviction, the expungement statutes accomplish virtually the same end, avoiding a criminal record, that the Office contends to be the purpose of the Sentence Deferral Program. If the Legislature's only intent in enacting AB 2124 were to create an expungement program with immediate effect, there were far more straightforward ways in which it could have accomplished such an intention. It would make little sense for the

---

[10] A Third District Court of Appeal case involving the drug offense diversion program established by statute highlights the adverse impact that financial penalties or fees can have. (See *People v. Trask* (2010) 191 Cal.App.4th 387.) In that case, the court noted that relying on non-payment of diversion program fees as a ground to terminate diversion would raise serious constitutional issues. (*Id.* at p. 397, fn. 3.)

13

Legislature to have created a new and arguably unnecessary "expungement" program, but then called that program a deferred sentencing program and placed it in the same title as other diversion and deferred entry of judgment programs rather than among the existing expungement statutes.

Indeed, defendant identifies a significant problem with construing the statutory scheme to provide relief only from the record of conviction and not the punishment provided by a misdemeanor statute. Defendant explains that "[i]f the only benefit to be derived were the absence of a conviction, but all other penalties were imposed, a defendant might fare better by going to trial with the possibility of being found not guilty. . . . The worst that could happen would be a conviction for the charge and the same penalties." Defendant further asserts that many such convictions could later be expunged via the existing expungement statutes in any event. We find the point persuasive. The Office's interpretation of section 1001.94, subdivision (f) reduces and perhaps even eliminates a defendant's incentive to participate in the program and forego going to trial. But avoiding the time and expense of certain misdemeanor trials is certainly one of the goals that animated supporters of AB 2124. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2124 (2013-2014 Reg. Sess.) Aug. 22, 2014, p. 1 [author's statement that "alternative sentencing as provided for in AB 2124 can save state and local governments substantial sums of money and help free up jurors from having to serve on comparatively inconsequential trials"]; cf. *People v. Cisneros* (2000) 84 Cal.App.4th 352, 357 [deferred entry of judgment program for first-time drug offenders must be "liberally construed to promote its objectives of rehabilitating novice drug users and of reducing congestion in the criminal justice system"].)

Contrary to the Office's suggestion, reading section 1001.94, subdivision (f) as we do creates no conflict with other statutes that require criminal defendants to pay court-related fees and assessments. The Office specifically points to the Government Code section 70373 assessment, the Penal Code section 1465.8 fee, and the Penal Code section 1001.90 fee. The Office contends the trial court here should have imposed each and

failed to do so only because it misinterpreted the meaning of section 1001.94, subdivision (f). We disagree.

The Government Code section 70373 assessment and the Penal Code section 1465.8 fee must be imposed on "every conviction for a criminal offense." (Gov. Code, § 70373, subd. (a)(1); Pen. Code, § 1465.8, subd. (a)(1).) Both sections expressly provide that "conviction" includes the "dismissal of a traffic violation on the condition that the defendant attend a court-ordered traffic violator school." (Gov. Code, § 70373, subd. (a)(2); Pen. Code, § 1465.8, subd. (a)(2).) The sections make no reference to any other diversion or deferred judgment program. There is therefore no conflict. A dismissal pursuant to the Sentence Deferral Program is not included in the definition of a "conviction," and the Legislature has not authorized the assessment or fee to be imposed on a defendant participating in the Sentence Deferral Program.

The section 1001.90 diversion restitution fee is different. A court shall impose that fee on "all persons charged with a felony or misdemeanor whose case is diverted by the court pursuant to this title. . . . " (Subd. (a).) Subdivision (i) provides that "[a]s used in this section, 'diversion' also means deferred entry of judgment pursuant to Chapter 2.5 (commencing with Section 1000)." At first blush, it would therefore appear that a section 1001.90 diversion restitution fee does not apply because the Sentence Deferral Program is not a diversion program, and is not included in the expanded definition of diversion provided in subdivision (i). Section 1001.94, subdivision (c), however, demonstrates that the Legislature did not so finely distinguish between diversion and deferred sentencing when it enacted AB 2124. That subdivision, included in the section that establishes the Sentence Deferral Program, states that a "defendant may make a motion for imposition of *diversion* pursuant to this section." (Emphasis added.) And section 1001.90 applies by its terms to all of Part 2, Title 6 of the Penal Code, which is the title in which the statutes establishing the Sentence Deferral Program are located. Subdivision (c) is therefore a sufficient indication that the Sentence Deferral Program is not excluded from section 1001.90's ambit, and a trial court must therefore comply with section 1001.90 when it defers sentencing pursuant to that program.

15

Our conclusion that the section 1001.90 fee applies, however, does not in any way undermine our reading of section 1001.94. There is no conflict between the two provisions. The trial court correctly deferred sentencing for defendant here, and unless it makes a finding pursuant to section 1001.90, subdivision (c), it must impose the fee in connection with its disposition of the case.

## III.  DISPOSITION

The order of the appellate division of the superior court granting the writ of mandate is reversed. The matter is remanded to the appellate division to vacate its order issuing a writ of mandate and to enter a new order denying the petition for writ of mandate. Further proceedings in the trial court shall be conducted in a manner consistent with this opinion.

CERTIFIED FOR PUBLICATION

BAKER, J.

We concur:

MOSK, Acting P.J.

KIRSCHNER, J. *

---

*     Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

16