Filed 11/21/23  P. v. Novela CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SERGIO NOVELA,<br><br>    Defendant and Appellant. | F085118<br><br>(Super. Ct. No. MCR046874)<br><br>**OPINION** |

### THE COURT*

APPEAL from a judgment of the Superior Court of Madera County.  Ernest J. LiCalsi, Judge.

Sharon G. Wrubel, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Christina Hitomi Simpson, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Detjen, Acting P. J., Peña, J. and Snauffer, J.

# INTRODUCTION

Following consolidation of five separate cases arising out of events on five different dates, a jury convicted defendant Sergio Novela as follows:

"*Count 1*:  First degree murder, committed for the benefit of a criminal street gang, during the commission of which a principal personally used and discharged a firearm, proximately causing great bodily injury or death.  (Pen. Code,[1] §§ 186.22, subd. (b)(5), 187, subd. (a), 12022.53, subds. (b)-(e)(1).)

"*Count 2*:  Discharge of a firearm from a motor vehicle at another person, committed for the benefit of a criminal street gang.  (§§ 186.22, subd. (b)(1)(B), 26100, subd. (c).)

"*Count 3*:  Premeditated attempted murder, committed for the benefit of a criminal street gang, during the commission of which a principal personally used and discharged a firearm.  (§§ 186.22, subd. (b)(5), 187, subd. (a), 664, 12022.53, subds. (b), (c) & (e)(1).)

"*Count 4*:  Assault with a firearm, committed for the benefit of a criminal street gang.  (§§ 186.22, subd. (b)(1)(B), 245, subd. (a)(2).)

"*Count 5*:  Active participation in a criminal street gang.  (§ 186.22, subd. (a).)

"*Counts 6 through 9*:  Unlawful possession of a firearm, committed for the benefit of a criminal street gang.  (§§ 186.22, subd. (b)(1)(A), 29800, subd. (a)(1).)

"*Counts 10 through 13*:  Unlawful possession of ammunition, committed for the benefit of a criminal street gang.  (§§ 186.22, subd. (b)(1)(A), 30305, subd. (a)(1).)

"*Count 14*:  Active participation in a criminal street gang.  (§ 186.22, subd. (a).)

"*Count 15*:  Assault by means of force likely to produce great bodily injury, committed for the benefit of a criminal street gang.  (§§ 186.22, subd. (b)(1)(A), 245, subd. (a)(4).)

---

[1] "All statutory references are to the Penal Code unless otherwise stated. . . ."

"*Count 16*:  Active participation in a criminal street gang.  (§ 186.22, subd. (a).)

"*Counts 17 through 19*:  Resisting and attempting to deter an executive officer in the performance of his duty.  (§ 69.)

"Following a bifurcated court trial, defendant was found to have been released from custody on bail or own recognizance when he committed counts 6 through 14 (§ 12022.1), and he was found to have suffered two prior convictions for serious felonies (§ 667, subd. (a)(1)) that were also strikes (*id.*, subds. (b)-(i)).  He was sentenced to a lengthy prison term and ordered to pay various fees, fines, and assessments."  (*People v. Novela* (May 18, 2022, F073275) [nonpub. opn.], fn. omitted (*Novela*).)

On appeal, we reversed the convictions on counts 3, 5, 14, and 16; the true findings as to the gang enhancements on counts 1 through 4, 6 through 13, and 15; and the true findings as to the gang-related firearm enhancements on counts 1 and 3.  We vacated the sentence in its entirety and remanded the matter for further proceedings and/or resentencing.  In all other respects, we affirmed.  (*Novela*, *supra*, F073275.)

On remand, the prosecutor elected not to retry the charges reversed on appeal.  On the prosecutor's motion, the court dismissed counts 3, 5, 14, and 16; the gang enhancements on counts 1 through 4, 6 through 13, and 15; and the gang-related firearm enhancements on counts 1 and 3.[2]  The court resentenced defendant, declining defendant's request to strike his prior serious felony enhancements (§ 667, subd. (a)(1)).

The court once again sentenced defendant to a lengthy prison term.  Relevant here, the sentence included two five-year terms for prior serious felony enhancements to each of counts 1, 2, and 4,[3] and a two-year term for the on-bail enhancement to count 6.  The

---

[2] The court's minute order regarding the dismissals does not reflect dismissal of the gang-related firearm enhancements, although these enhancements clearly were dismissed.

[3] The prior serious felony enhancement terms were stayed on counts 2 and 4 pursuant to section 654.

sentence also included $640 in court operations assessments (§ 1465.8, subd. (a)), and $480 in criminal conviction assessments (Gov. Code, § 70373).

Defendant now argues the court abused its discretion in declining to strike the prior serious felony enhancements and the on-bail enhancement pursuant to section 1385. He also argues the court erred in its calculation of assessments, an issue which the People concede.

We conclude the court did not abuse its discretion in declining to strike the enhancements. We accept the People's concession with regard to the assessments and order the judgment corrected. In all other respects, we affirm.

## FACTUAL BACKGROUND

As the issues presented in this appeal relate only to resentencing, we summarize the facts, as presented in our opinion in defendant's prior appeal, only briefly.[4] (*Novela*, *supra*, F073275.) We omit facts pertaining only to the dismissed counts and allegations.

### *Evidence Related to Counts 1 and 2*

On March 21, 2013, Robert Moreno was shot and killed during a drive-by shooting. During the incident, a bottle also was thrown from the car at Moreno and his companions. Law enforcement subsequently found a beer bottle in the area of the shooting. It bore defendant's fingerprint. Evidence found in defendant's cell after his arrest suggested he took credit for the murder.

### *Evidence Related to Count 4*

At approximately 3:14 a.m. on March 29, 2013, Jairo I. and G.A., both of whom had no gang affiliation, drove around in G.A.'s car to look for K., who had left Jairo's house on foot after she and G.A. got into an argument. When Jairo and G.A. found K., G.A. got out of the car to talk to her. Jairo noticed a car pass by them, then come back

---

[4] We grant defendant's unopposed request for judicial notice of the record on appeal in *Novela*, *supra*, F073275.

4.

toward them and park behind them, blocking G.A.'s car. A person wearing a blue flannel shirt jumped out of the driver's side backseat, pointed a gun at G.A., and asked, "Do you bang?" When G.A. said no, the person got back into the car behind the driver and the car left.

Jairo told G.A. and K. to get in G.A.'s car. They drove around the corner to Jairo's home, parked the car, and started walking toward the house. As they were crossing the street, the other car came around. Jairo, G.A., and K. ran for the house. The car passed them, then the person wearing the flannel shirt got out of the driver's side backseat and fired a shot. The bullet shattered the windshield and back window of the pickup truck behind which Jairo had taken cover. It then lodged in K.'s car.

A vehicle matching the description of the suspect vehicle was stopped by law enforcement shortly thereafter, about a mile and a half from the scene of the shooting, with three occupants. Defendant was the driver. Jairo identified one of the other occupants of the vehicle as the shooter.

### *Evidence Related to Counts 6 through 13*

On the morning of July 9, 2013, a search warrant was executed at a duplex in the 100 block of East 12th Street, Madera. As police approached the house, Sergeant Foss heard a door in the back of the house open and slam shut, then what sounded like fences being jumped. Two blocks away and approximately 15 to 25 minutes later, Foss observed defendant walking down the street. Defendant was very sweaty and, despite the fact it was cold, was wearing shorts and a tank top and no shoes. When Detective Cederquist, who was driving, pulled up next to defendant, Foss asked where he was coming from. Defendant turned as if to head in the opposite direction and said something about coming from a friend's house. When Foss began to open the car door, defendant fled. After a short pursuit, defendant was taken into custody. There was a large splinter on his shirt that looked like it was from a wooden fence.

5.

Meanwhile, law enforcement personnel forced entry into the home. Detective Keiser, heard a door slam toward the back of the residence and footsteps, as if someone was running from the residence. Upon entry, Keiser saw the back kitchen door was partially open. Loaded firearms and methamphetamine packaged for sale were found in two of the bedrooms. Evidence collected at the scene indicated defendant had been living in one of the two bedrooms or staying there for days at a time.

## Evidence Related to Count 15

On the morning of July 28, 2013, a fight broke out in Module H of the jail. Multiple inmates, including defendant, assaulted another inmate.

## Evidence Related to Counts 17 through 19

On August 2, 2013, correctional officers explained to defendant that he was being reclassified and rehoused due to an incident earlier that morning. Correctional Corporal Humbert, Correctional Officer Hensel, and Corporal Lawrence unshackled defendant so that he could change into the clothing designated for his new housing unit. Defendant became very upset and told the officers to "get the fuck out of the cell" so he could change. Lawrence stepped out, then Humbert followed. As Hensel was stepping out, defendant punched him with a fist on the left side of the head. Hensel grayed out a bit and fell back into the sink, then he and defendant started having a fist fight. Defendant continued to fight and resist the officers' attempts to take him to the ground. It took the efforts of several additional officers, and Humbert striking defendant in the thigh with his baton, before defendant could be restrained. Defendant was placed in an intake cell, where he yelled through the door, "I'm going to 'F' you up, Humbert. You're next," or, "Humbert, you're a bitch and you're next."

Defendant's conduct deterred and delayed Humbert, Hensel, and Lawrence in the performance of their duties.

6.

## DISCUSSION

### I.    THE COURT DID NOT ABUSE ITS DISCRETION AS TO THE ENHANCEMENTS

Defendant contends the court abused its discretion in declining to strike his two prior serious felony enhancements and the on-bail enhancement.[5] We disagree.

### A.    Additional Factual Background

When the parties appeared for resentencing, defense counsel asked the court to consider striking the prior serious felony enhancements "based on the new cha[n]ges to [section] 1385 and the mitigating circumstances that were passed this year. Specifically, that [defendant] has multiple enhancements that . . . will be imposed in this case, if the [c]ourt imposes both [prior serious felony enhancements], as well as the fact that both of the [prior serious felonies] were over five years old . . . ."

The People explained that the first prior serious felony involved violation of section 69 with great bodily injury. That offense occurred in 2010, while the murder in the instant case occurred in 2013. In that prior case, defendant "had contact with law enforcement, he ended up punching the officer on the side of this arm causing him to fire. The officer was off work for a year. During his apprehension, he threatened to kill that officer when he got out of jail. He called the officer 'fucking pigs, fucking *putos*' and yelled 'southside for life.' I think it is important to note that in our case that he is being resentenced on today, he had another set of [section] 69 charges, where he assaulted officers in the Madera County Jail."

The People pointed out that the second prior serious felony occurred in 2012 and involved defendant "riding around with other gang members, pulled up to some young

---

**5** Defendant acknowledges defense counsel did not argue for dismissal of the on-bail enhancement. To the extent this failure forfeited the issue, he argues ineffective assistance of counsel. We address and reject this claim on the merits. (See *People v. Marlow* (2004) 34 Cal.4th 131, 150 [Even where an issue has been forfeited, if defendant "asserts his counsel thereby rendered ineffective assistance . . . we turn to the merits of the claim"].)

men wearing red soccer jerseys, asked them if they banged, and pointed a firearm at them."  The People again emphasized the proximity in time between this offense and the murder in the instant case and argued, "His conduct is extremely dangerous to this community, and I don't think the [c]ourt should strike it."

The court declined to strike the prior serious felony enhancements, stating, "[T]he [c]ourt will note that it is using its discretion not to strike those . . . prior serious felonies, given the fact that they were close in time to the commission of [c]ount 1, and they show a pattern of extreme violence, where the defendant reign[ed] terror upon the streets of – in particular Madera, and for those reasons, the [c]ourt is not going to strike them."

The court then sentenced defendant to an aggregate indeterminate term of 100 years to life, plus 10 years, and an aggregate determinate term of 13 years, 4 months[6] as follows:

*Count 1*:  A term of 75 years to life, plus two additional five-year terms for the two prior serious felony enhancements.

*Count 2*:  A term of 25 years to life, stayed pursuant to section 654, plus two additional five-year terms for the two prior serious felony enhancements, also stayed pursuant to section 654.

*Count 4*:  An unstayed term of 25 years to life, plus two additional five-year terms for the two prior serious felony enhancements, stayed pursuant to section 654.

---

[6] The court, orally and in its minute order and abstract of judgment, incorrectly stated that defendant's total sentence was an indeterminate term of 100 years, plus a determinate term of 21 years, 4 months.  Although the abstract of judgment correctly notes the sentences on counts 17, 18, and 19 are consecutive, it then lists the terms for those counts in parenthesis, a designation commonly used for concurrent terms.  Conversely, the abstract of judgment correctly notes the sentences on counts 7, 8, and 9 are concurrent, but lists the terms for those counts without parenthesis, a designation commonly used for consecutive terms.  This appears to be the source of the miscalculation.  On remand, the court shall correct the sentencing minute order and abstract of judgment to reflect a total, unstayed determinate term of 13 years, 4 months.

*Count 15:* A middle-term sentence of six years, deemed the principal term.

*Count 6:* A consecutive 16-month term (one-third of the middle term), plus an additional two-year term for the on-bail enhancement.

*Counts 7-9:* A concurrent middle-term sentence of four years on each count.

*Counts 10-13:* A concurrent middle-term sentence of four years on each count, stayed pursuant to section 654.

*Counts 17-19:* A consecutive 16-month term (one-third of the middle term) on each count.

## B.     Applicable Law

At the time of defendant's original sentencing, the court was prohibited from striking the prior serious felony enhancements. (*People v. Cepeda* (2021) 70 Cal.App.5th 456, 461; *People v. Reneaux* (2020) 50 Cal.App.5th 852, 875.) However, by the time of defendant's recent resentencing, Senate Bill No. 1393 (2017-2018 Reg. Sess.) had removed this prohibition. (Stats. 2018, ch. 1013, §§ 1, 2.) In addition, Senate Bill No. 81 (2021-2022 Reg. Sess.) and Assembly Bill No. 200 (2021-2022 Reg. Sess.) respectively added, and later amended, section 1385, subdivision (c), which at the time of resentencing provided, as it does now, in relevant part as follows:

> "(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

> "(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others."

9.

The mitigating circumstances identified in the cited subparagraphs include "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed"; "(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5"[7]; and "(H) The enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2).)

A split of authority has emerged among the Courts of Appeal regarding the application of section 1385, subdivision (c)(2). (Compare *People v. Walker* (2022) 86 Cal.App.5th 386, 395, rev. granted Mar. 22, 2023, S278309 (*Walker*), with *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1090, rev. granted Apr. 12, 2023, S278894 (*Ortiz*).) In *Walker*, the court held that the term "great weight," as used in section 1385, subdivision (c)(2) "places a thumb on the scale that balances the mitigating circumstances favoring dismissal against whether dismissal would endanger public safety, and tips that balance in favor of dismissal unless rebutted by the court's finding that dismissal would endanger public safety." (*Walker*, *supra*, 86 Cal.App.5th at pp. 399–400, rev. granted.) Thus, under the holding in *Walker*, "trial courts are to rebuttably presume that dismissal of an enhancement is in the furtherance of justice (and that its dismissal is required) *unless* the court makes a finding that the resultingly shorter sentence due to dismissal 'would endanger public safety.' " (*Id.* at p. 398.)

However, in *Ortiz*, the court declined to follow *Walker*'s "formalistic reading" of section 1385, subdivision (c)(2). (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1098, rev. granted.) The *Ortiz* court explained:

> "In our view, the ultimate question before the trial court remains whether it is in the furtherance of justice to dismiss an enhancement. To be sure, the Legislature has invested the enumerated mitigating circumstances with

---

[7] As defendant points out, this mitigating circumstance would apply only to the on-bail enhancement to count 6.

great weight, both in the trial court's evaluation of the defendant's evidence in the first instance and in the trial court's consideration of the mitigating circumstance once established. But this does not preclude a trial court from determining that countervailing factors—other than the likelihood of physical or other serious danger to others—may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice. Interpreting the statute, as the *Walker* court does [citation], to require the trial court to dismiss an enhancement absent a finding that dismissal would endanger public safety would divest the trial court of its ultimate discretion under the statute to determine what is in furtherance of justice, considering all relevant factors." (*Ibid.*)

The question of how courts should construe and apply section 1385, subdivision (c)(2) is currently pending before our Supreme Court. In granting review of the *Walker* decision, our high court defined the issue as follows: "Does the amendment to . . . section 1385, subdivision (c) that requires trial courts to 'afford great weight' to enumerated mitigating circumstances (Stats. 2021, ch. 721) create a rebuttable presumption in favor of dismissing an enhancement unless the trial court finds dismissal would endanger public safety?" (*Walker*, *supra*, S278309.)

We review the trial court's decision declining to dismiss a sentencing enhancement for abuse of discretion. (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298.) A court abuses its discretion where it acts without being aware of the scope of its discretion, considers impermissible factors, or fails to consider relevant factors. (*People v. Dryden* (2021) 60 Cal.App.5th 1007, 1029; *People v. Avila* (2020) 57 Cal.App.5th 1134, 1141.)

### C. Analysis

Defendant contends the court abused its discretion in declining to dismiss the enhancements because (1) the court did not give "great weight" to the mitigating circumstances; (2) the court did not find that dismissal of the enhancements would endanger public safety, and instead relied on defendant's past dangerousness; and (3) in

11.

light of defendant's otherwise lengthy sentence, dismissal of the enhancements could not endanger public safety.

### i.    Great weight to mitigating factors

Defendant contends there is no indication the trial court afforded great weight to the mitigating circumstances that multiple enhancements were alleged, count 6 was not a violent felony, and his prior convictions were over five years old.[8]  (See § 1385, subd. (c)(2)(B), (F), (H).)

Absent evidence to the contrary, we presume the trial court knew and applied the current law.  (*People v. Ramirez* (2021) 10 Cal.5th 983, 1042; *People v. Thomas* (2011) 52 Cal.4th 336, 361.)  We therefore presume the court was aware of and applied the amendments to section 1385, which had taken effect more than nine months prior. Indeed, in our prior opinion, we expressly noted these amendments would apply at any resentencing.  (*Novela*, *supra*, F073275.)  We additionally note that the facts bearing on the mitigating circumstances – the number of enhancements, the age of prior convictions, and the nature of the substantive offenses – would have been readily apparent to the trial court.

The presumption that a court is aware of and applies current law may be rebutted where the record affirmatively demonstrates the trial court was unaware of or misunderstood its sentencing discretion.  (*People v. Leon* (2016) 243 Cal.App.4th 1003, 1026.)  In such cases, remand is required "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' "  (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)  Here, nothing in the record indicates the trial court was unaware of its discretion under section 1385 or the weight to be given to mitigating circumstances.  We are unable to infer from the present

---

**8** The People do not contend any of these mitigating circumstances were inapplicable, but rather assume *arguendo*, that these mitigating circumstances applied. We do the same.

record that the trial court failed to give great weight to the mitigating circumstances. Regardless, the record clearly indicates the court would have imposed the same sentence because, as we explain below, the court determined dismissal of the enhancements would endanger public safety. (§ 1385, subd. (c)(2).)

### ii. Reliance on past dangerousness

Defendant contends the trial court did not find that dismissal of the enhancements would endanger public safety, but rather determined only that defendant's past conduct was dangerous, which finding he contends is insufficient to countervail the mitigating circumstances favoring dismissal of the enhancements. (See § 1385, subd. (c)(2).) We disagree.

Nothing in the present record suggests the court resolved the public safety issue in defendant's favor. The People argued defendant's prior offenses showed that his "conduct *is* extremely dangerous to this community." (Italics added.) In declining to strike the prior serious felony enhancements, the court noted the offenses were committed close in time to the commission of count 1 and "they show a pattern of extreme violence, where the defendant reign[ed] terror upon the streets of – in particular Madera." Although not expressly stated, the court's comments reasonably may be interpreted as a finding that dismissal of the enhancements would endanger public safety due to defendant committing numerous violent crimes in close proximity to one another. Meanwhile, no evidence was presented to suggest defendant was no longer inclined toward such conduct. Regardless of whether danger to public safety is merely one factor the court must consider in evaluating whether dismissal is in the furtherance of justice (*Ortiz*, *supra*, 87 Cal.App.5th at p. 1098, rev. granted), or whether such finding is required to rebut a presumption in favor of dismissal (*Walker*, *supra*, 86 Cal.App.5th at p. 398, rev. granted), the court did not abuse its discretion.

13.

### iii. Length of sentence

Defendant also argues the court abused its discretion in determining dismissal of the enhancements endangered public safety, given the overall length of defendant's sentence. In other words, because defendant has been sentenced to a term greater than 100 years to life, the court could not rationally conclude that removing 12 years from his sentence would endanger public safety. We disagree.

Nothing in section 1385 suggests that any particular term is either necessary or excessive to prevent danger to public safety. Rather, it is the trial court that is tasked with determining whether dismissal of an enhancement term will endanger public safety in a given context. Under the discretionary process established by section 1385, subdivision (c), a court may rationally conclude that a lengthy sentence, including a sentence that would appear to extend past a defendant's natural life, is necessary to protect public safety. Significantly, we note that defendant's sentence already was reduced by more than 100 years when several counts and enhancements were dismissed due to retroactive, ameliorative changes in law. Declining to dismiss the remaining enhancements in the instant case preserves the court's ability to impose a sentence that it believes will best protect public safety.

In sum, we conclude the court did not abuse its discretion in declining to dismiss the enhancements.

## II. THE COURT ERRED IN CALCULATING ASSESSMENTS

Defendant argues, and the People concede, the court erred in calculating certain assessments imposed at sentencing. We agree.

Defendant initially was convicted of 19 offenses. (*Novela*, *supra*, F073275.) However, four counts were reversed and eventually dismissed, leaving defendant with 15 counts of conviction. At the resentencing hearing, the court orally pronounced that it was imposing $1,850 in fines and assessments as indicated in the probation report, and as would be listed in the court's minute order and the abstract of judgment. The probation

14.

report, sentencing minute order, and abstract of judgment all reflect that the fines and assessments included $640 in court operations assessments (§ 1465.8) and $480 in criminal conviction assessments (Gov. Code, § 70373).

Section 1465.8, subdivision (a)(1) provides, in relevant part, that a court operations assessment of $40 "shall be imposed on every conviction for a criminal offense." Defendant was convicted on 15 counts and should have been assessed $600 pursuant to section 1465.8.[9] Instead, however, the sentencing minute order and the abstract of judgment state the court imposed a $640 court operations assessment under section 1465.8, subdivision (a). This amount is incorrect and the sentencing minute order and abstract of judgment must be corrected to reflect a court operations assessment of $600 pursuant to section 1465.8, subdivision (a).

Government Code section 70373 provides, in relevant part, that a $30 assessment "shall be imposed on every conviction" for a misdemeanor or felony. As stated, defendant was convicted on 15 counts and should have been assessed $450 pursuant to Government Code section 70373. Instead, the sentencing minute order and the abstract of judgment state the court imposed $480 in criminal conviction assessments. This amount is incorrect and the sentencing minute order and abstract of judgment must be corrected to reflect a criminal conviction assessment of $450 pursuant to Government Code section 70373.

## DISPOSITION

The matter is remanded for the court to correct the abstract of judgment and sentencing minute order to reflect a total unstayed determinate term of 13 years, 4 months, $600 in court operations assessments (§ 1465.8) and $450 in criminal convictions assessments (Gov. Code, § 70373), and to forward a copy of the corrected

---

[9] It is undisputed that dismissal of a charge prohibits imposition of assessments for that charge under both section 1465.8 and Government Code section 70373. (See *People v. Superior Court* (*Sanchez-Flores*) (2015) 242 Cal.App.4th 692, 707.)

abstract of judgment to the appropriate authorities.  The judgment, as corrected, is affirmed.